CC-2000-645                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ubaldino Jusino Figueroa, et als.<br>        Recurridos<br><br>                v.<br><br>Walgreens of San Patricio Inc.,<br>y otros<br>        Peticionaria | Certiorari<br><br>2001 TSPR 150<br><br>155 DPR \_\_\_\_ |

Número del Caso: CC-2000-0645


Fecha: 1/noviembre/2001


Tribunal de Circuito de Apelaciones:
                         Circuito Regional V


Panel integrado por su Presidenta, Jueza Fiol Matta, la Jueza Rodríguez de Oronoz y el Juez González Román


Abogados de la Parte Peticionaria:
                         Lcdo. Guillermo Ramos Luiña
                         Lcda. Yolanda M. Román Gómez


Abogados de la Parte Recurrida:
                         Lcdo. Eric Alvarez Feliciano
                         Lcdo. Rafael Emmanuelli


Materia:  Despido Injustificado

       Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ubaldino Jusino Figueroa
*et als*.

 Recurridos

   v.
    CC-2000-645
Walgreens of San Patricio
Inc., y otros

 Peticionaria

Opinión del Tribunal emitida por el Juez Asociado señor Corrada del Río

San Juan, Puerto Rico, a 1 de noviembre de 2001.

I

El Sr. Ubaldino Jusino Figueroa (en lo sucesivo, "el recurrido"), es farmacéutico licencia y laboró para la peticionaria, Walgreens de San Patricio, Inc. (en lo sucesivo, "Walgreens"), en la ciudad de Ponce, desde 1987 hasta que fue cesanteado en 20 de septiembre de 1995. El 1 de abril de 1996, éste presentó reclamación judicial contra Walgreens en el Tribunal de Primera Instancia (TPI), Sala Superior de Ponce. Formuló varias causas de acción, a saber: que su despido fue injustificado, según la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185a *et*

*seq.* ("Ley 80"); que su despido se debió a razones discriminatorias e ilegales (*i.e.*, discrimen por edad[1]), según la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. sec. 136 *et seq.* ("Ley 100"); que su despido se debió a una interferencia culposa de tercero en la relación contractual existente entre Walgreens y el recurrido al amparo de la jurisprudencia de este Tribunal y del artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141; y que su despido causó daños y perjuicios compensables a base de la doctrina general de la culpa aquiliana del artículo 1802 del Código Civil, *Íbid.*[2]

El recurrido también nombró como parte demandada a la Sra. Iris V. Ortíz (en adelante, "Sra. Ortiz"). La Sra. Ortiz también es farmacéutica licenciada y se desempeñaba como Farmacéutico Regente en la sucursal de Walgreens en Ponce a la fecha del despido.[3] El recurrido alega que el discrimen del cual él fue objeto fue directamente instigado por ésta mediante "una campaña dirigida" en su contra.[4] Por tanto, alegó que, jurídicamente, dichos actos constituyen

---

[1] El recurrido tenía sesenta y dos (62) años de edad al momento de su despido.

[2] Además del recurrido, también figuraban como demandantes sus tres (3) hijos: Anisyn Jusino Quiñónez, Allan Jusino Quiñónez, y Edwin Jusino Quiñónez.

Asimismo, cabe advertir las diferentes partidas de daños que reclamó el recurrido en su demanda; a saber: reclamó la suma de $8640 por su acción por despido injustificado; la suma de $423,120 por la acción por discrimen en el empleo; la suma de $436,560 por la acción de interferencia torticera contractual de tercero; y $225,000 por su acción de daños extracontractual.

[3] Según surge del expediente, el Farmacéutico Regente es quien verifica que un solicitante tenga los requisitos para ocupar la posición de farmacéutico en Walgreens, incluyendo que tenga la licencia exigida por ley,

continúa...

[3] ...continuación
experiencia previa de trabajo, y otros. Las personas que cumplan los requisitos de ley para ocupar la posición de farmacéutico, generalmente son entrevistadas tanto por el Gerente de la tienda como por el Farmacéutico Regente. Asimismo, el Farmacéutico Regente participa de las evaluaciones periódicas que sobre los empleados farmacéuticos se efectúan, conjuntamente con el Supervisor de Distrito.
En lo que respecta a asuntos tales como descuadres de cajas registradoras, ausencias injustificadas, quejas de clientes sobre conductas inapropiadas de empleados en general, el Gerente de la tienda es el encargado de tomar las medidas que estime pertinentes (*e.g.*, reprimendas, amonestaciones, o suspensiones). En cuanto a los asuntos disciplinarios y aspectos técnicos del recetario, el Farmacéutico Regente es el encargado, ya que éste tiene la responsabilidad de velar sobre todos los procedimientos del recetario. Apéndice, pág. 502-503.

[4] Apéndice, pág. 50.

una "intervención" o "interferencia" intencional e ilegal con el contrato laboral que existía entre él y Walgreens.

Por su parte, Walgreens contestó la demanda el 10 de septiembre de 1996.[5] En esencia, negó las alegaciones de que el despido fue injustificado o discriminatorio. Asimismo, alegó que la separación del recurrido de su empleo se debió exclusivamente a actuaciones que sólo le eran imputables a éste, y aseveró que el recurrido nunca fue objeto de discrimen en el lugar de trabajo. Además, alegó como defensa afirmativa que la destitución del recurrido respondió exclusivamente a que éste incurrió en repetidas y graves violaciones a las normas de la compañía en el desempeño de sus funciones como farmacéutico, tales como haberle suministrado fármacos erróneos a clientes y haber suministrado medicamentos controlados sin que haya mediado receta de un médico autorizado, entre otras.[6] Negó, por último, que haya habido alguna interferencia con el contrato de empleo por parte de la Sra. Ortiz.

Luego de varios procedimientos, el 14 de septiembre de 1998, el recurrido presentó solicitud de sentencia sumaria al amparo de la Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III. En apoyo de su solicitud, argumentó que su despido fue injusto e ilegal porque supuestamente no se siguió el procedimiento establecido en la reglamentación interna de la entidad. A dicha solicitud se opuso Walgreens.

El 21 de junio de 1999, Walgreens también presentó una solicitud de sentencia sumaria. En la misma reiteró que el despido respondió exclusivamente

---

[5] El abogado de Walgreens contestó la demanda también en representación de los demás demandados, la Sra. Ortíz, su esposo (denominado en epígrafe como "Fulano de Tal"), y la Sociedad de Bienes Gananciales integrada por éstos.

[6] Apéndice, págs. 52-56. En específico, Walgreens acusó al recurrido de 1) autorizar y permitir descuentos no autorizados para empleados de recetario para llevar mercancía de piso procesada por intercom, sin mediar receta; 2) no verificar adecuadamente una receta la cual redundó en mal despacho de una sustancia controlada C-II y no comunicarse luego con el cliente para verificar su estado de salud; 3) expedir cien (100) pastillas genéricas de Fioricet a una cliente de apellido Hernández sin haber mediado receta; 4) expedir recetas a un paciente de apellido Cartagena, pese a que las mismas contenían discrepancias en la escritura de los médicos y en la cantidad de los medicamentos prescritos; 5) incumplir con las normas de Walgreens sobre labores de recetario, tales como horas, firmas, fechas, direcciones al verificar y despachar recetas, además de descuadre en el inventario del fármaco denominado Demerol. Walgreens alegó que dicha conducta constituyó "fraude" y "hurto de propiedad de la compañía", o sea, "tomar mercancía de la compañía

**a que el recurrido había cometido graves faltas en el desempeño de su trabajo. Indicó además que el recurrido violó en repetidas ocasiones el reglamento interno de la empresa, y que, pese a las amonestaciones, fue sumamente negligente en el desempeño de sus funciones. Asimismo Walgreens volvió a comparecer ante el TPI, el 8 de julio de 1999, mediante moción, solicitando la desestimación de la reclamación por la alegada interferencia culposa de contrato.**[7]

El 4 de octubre de 1999, el TPI dictó sentencia sumaria a favor de Walgreens al amparo de la Regla 36, *supra*.[8] En consecuencia, desestimó cada una de las reclamaciones presentadas por el recurrido, incluyendo las de despido injustificado y de discrimen por razón de edad. El foro de instancia resolvió que, a base de la prueba documental presentada, no cabía duda de que "[a]l Sr. Ubaldino se le brindó oportunidad suficiente para que corrigiera las faltas por él incurridas, aún cuando entendemos que no era necesario ni obligatorio el que se le brindaran, **debido a la naturaleza de las faltas incurridas** por el Sr. Ubaldino Jusino".[9] En adición, sentenció que "[l]a decisión de despido del Sr. Ubaldino Jusino se tomó en consideración del buen y normal funcionamiento de Walgreens, así como **la seguridad de las personas a quienes Walgreens brinda sus servicios de recetario**".[10]

De igual forma, desestimó la acción de daños por interferencia culposa de contrato que pendía en contra de la Sra. Ortiz. El TPI también declaró improcedente la solicitud de sentencia sumaria hecha por el recurrido, al razonar que:

> A diferencia de la parte demandante, la codemandada Walgreens apoyó sus alegaciones con declaraciones juradas y proveyó prueba que de ser presentada en la vista en su fondo hubiera sido admitida a tenor con las Reglas de Evidencia. Según surge del texto de la Regla 36.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, tras la presentación de una solicitud de sentencia sumaria, "la parte contraria no podrá descansar

---

sin pagar la misma o permitir que un amigo o pariente haga lo mismo", todo ello, en violación de la reglamentación interna de la compañía.

[7] Véase "Solicitud de Desestimación de la Causa de Acción por Daños y Perjuicios por Interferencia Culposa de Contrato", Apéndice, pág. 542.

[8] Véase "Sentencia", Apéndice, pág. 33-46.

[9] *Id*., pág. 43. (Énfasis suplido.)

[10] *Id*. (Énfasis suplido.)

solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que vendrá obligada a contestar en forma tan detallada y específica, como lo hubiere hecho el promovente, exponiendo aquellos hechos pertinentes a la controversia real que debe ser dilucidado en un juicio." Los demandantes venían obligados en la misma forma en que la codemandada planteó sus alegaciones, es decir, los demandantes no presentaron prueba que apoyara su oposición a la solicitud de sentencia sumaria presentada por Walgreens. La codemandada demostró que no existe controversia real en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de ella.[11]

Inconforme, el recurrido recurrió al Tribunal de Circuito de Apelaciones (TCA) mediante recurso de apelación. El 22 de mayo de 2000 el TCA emitió sentencia confirmando y revocando en parte la dictada por el TPI. Si bien entendió que fue correcta la determinación del TPI de desestimar la reclamación por interferencia culposa con el contrato, resolvió, luego de reiterar la casuística de este Tribunal, que el foro apelado había errado al desestimar las reclamaciones por despido injustificado y discrimen por edad.

Walgreens acude ante nos mediante recurso de *certiorari*[12] planteando el siguiente error:

> Erró el Tribunal de Circuito de Apelaciones al determinar que este caso no podía resolverse sumariamente [toda vez que:]
> 1. La parte recurrida no demostró que existía controversia real y sustancial de hechos materiales que impidan disponer del caso por la vía sumaria.
> 2. [E]l estado mental del demandante al cometer las faltas que provocaron su despido no es pertinente para efectos de dictar sentencia sumaria en este caso, una vez Walgreens ha establecido dichas faltas y éstas tampoco han sido controvertidas por la parte recurrida.

Acordamos expedir el *certiorari* el 13 de octubre de 2000. Las partes han comparecido con sus respectivos alegatos. Luego de analizar el caso, procedemos a resolver.

II

Primeramente, resulta conveniente repasar el esquema legal sobre el cual el recurrido basó su reclamación judicial.

---

[11] *Id.*, pág. 41. Cabe indicar que ya el TPI había declarado sin lugar la solicitud de sentencia sumaria del recurrido, mediante resolución de 8 de julio de 1999. Véase Apéndice, pág. 558.

### A. Ley 80 y "justa causa"

En primer lugar, el recurrido sostuvo que su destitución no cumplió con el requisito de "causa justa" dispuesto en la Ley 80.

La Ley 80 tiene un valioso propósito social y coercitivo, a saber, sancionar que un patrono despida a su empleado u empleada salvo que demuestre una causa justificada para ello. En otras palabras, tiene el propósito de brindarle mayor protección a los trabajadores de Puerto Rico. Igualmente, tiene un fin reparador, pues provee remedios justicieros y consubstanciales con los daños que puede haberle causado a un cesanteado un despido injustificado. *Beauchamp v. Holsum Bakers of P.R.*, 116 D.P.R. 522, 526 (1985).

En vista de su propósito reparador, la Ley 80 debe siempre interpretarse de manera liberal y favorable al empleado. *Belk v. Martínez*, res. el 30 de junio de 1998, 146 D.P.R. __, 98 T.S.P.R. 109, 98 J.T.S. 92; *Martínez Reyes v. Tribunal Superior*, 104 D.P.R. 407 (1975).[13]

Ahora bien, la Ley 80 no define el término "despido sin justa causa". Sólo enumera, a modo general, una serie de circunstancias que justifican el despido de un empleado u empleada. Así, pues, el artículo 2 de la Ley dispone en parte que:

> Se entenderá por justa causa para el despido de un empleado de un establecimiento:
>
> (a) Que el obrero siga **un patrón de conducta impropia o desordenada.**
> (b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y **negligentemente o en violación de las normas** de calidad del producto que se produce o maneja por el establecimiento.
> (c) **Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.**
> (d) Cierre total, temporero o parcial de las operaciones del establecimiento.
> (e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o

---

[12] El recurso de *certiorari* de Walgreens fue presentado el 20 de julio de 2000.

[13] Conforme a dicho propósito, la Ley 80 establece un sistema de indemnización progresiva para situaciones de despidos que no hayan tenido justificación. *Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 536 (1979).

maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido. 29 L.P.R.A. sec. 185b. (Énfasis suplido.)

Obviamente, ante la dificultad que representa intentar establecer y enumerar en un estatuto todas las posibles situaciones que podrían justificar un despido, los tribunales tenemos la obligación de evaluar situaciones, no contempladas de forma expresa por la Ley 80, para determinar si medió, o no, justa causa para el despido de un trabajador.[14] De hecho, en el caso de *Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 536, 542 (1979), indicamos que la "[l]ey no pretende ni puede . . . ser un código de conducta conteniendo una lista de faltas claramente definidas y la sanción que corresponde a cada una y en cada instancia, si ha de ser reprimenda, suspensión o despido. Esa es opción del patrono que puede adoptar reglas y reglamentos razonables que estime necesarios para el buen funcionamiento de la empresa". (Escolios y énfasis suprimidos.) Así pues, los patronos pueden aprobar reglamentos internos y establecer las normas de conducta en el lugar de trabajo que estimen necesarias, y los empleados estarán sujetos a ellos, siempre y cuando los mismos cumplan con el criterio de razonabilidad.

A tales efectos, las violaciones de las normas del empleo constituirán "justa causa" para el despido cuando el patrono logre demostrar 1) que las reglas establecidas para el funcionamiento del establecimiento son razonables, 2) que le suministró una copia escrita de dichas normas al empleado, y 3) que el empleado las violó en reiteradas ocasiones. *Rivera Aguila v. K-Mart de P.R.*, 123 D.P.R. 599 (1989).

---

[14] Al hacer dicha determinación, claro está, es imperativo recordar que la Ley 80, en el artículo anteriormente citado, dispone de modo categórico que "[n]o se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento". *Íbid.*

Del mismo modo, debemos señalar que la Ley 80 no favorece el despido como sanción a la primera falta, como regla general. *Srio del Trabajo v. I.T.T.*, 108 D.P.R. 536 (1979). Sin embargo, dicha regla no es absoluta. Hemos sido enfáticos al advertir que la Ley 80 no veda por completo la alternativa de despedir a un empleado que haya cometido solamente una falta. Empero, también hemos explicado que la falta que dé lugar al despido tiene que ser de tal seriedad o naturaleza, tan grave, tan lesiva a la paz y al buen orden de la empresa, que resulte imprudente tener que esperar su reiteración para destituir al empleado. *Delgado Zayas v. Hosp. Med. Avanzada*, 137 D.P.R. 643 (1994). En otras palabras, el patrono tiene el peso de demostrar que el empleado cometió una falta cuya intensidad de agravio haga precisa la destitución, para proteger la buena marcha de la empresa y la seguridad de las personas que allí laboran, o inclusive de terceros que la visitan.

### B. Ley 100 y el discrimen en el empleo

En segundo lugar, el recurrido alegó que fue destituido de su empleo debido a su edad, y que ello constituyó un acto ilegal y discriminatorio, según la Ley 100.

En el pasado hemos indicado que la génesis de la Ley 100, en 1959, respondió al elevado propósito de desarraigar la indeseable práctica social de muchos patronos de discriminar contra los empleados (y aspirantes a empleo) exclusivamente por razón de su edad, raza, color, sexo, origen social o nacional, condición social, ideas políticas o religiosas. *Santini Rivera v. Serv Air, Inc.*, 137 D.P.R. 1, 4 (1994); *Cardona v. Depto. Recreación y Deportes*, 129 D.P.R. 557 (1991); *García Pagán v. Shiley Caribbean, etc.*, 122 D.P.R. 193 (1988). La Ley 100 lo que ha hecho simplemente es instrumentar esa política pública, estableciendo a favor del empleado una causa de acción civil por daños. *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485 (1985).

El artículo 3 de dicha ley establece una presunción controvertible de discrimen favorable al empleado, que obliga al patrono a probar que el despido **no** fue discriminatorio. 29 L.P.R.A. sec. 148. Empero, hemos resuelto que, a diferencia de la doctrina federal, ello no significa que en nuestra jurisdicción sea necesario que el patrono "articule" afirmativamente una

explicación razonable para el despido. *Ibáñez v. Molinos de P.R., Inc.*, 114 D.P.R. 42, 53 (1983). Basta con que el patrono pruebe, aun mediante evidencia circunstancial, que la razón para el despido no fue discriminatoria para que la presunción quede destruida. *Id*.[15]

Conviene aclarar, por último, que una reclamación de discrimen bajo la Ley 100 podría ser improcedente si, a pesar de no existir "justa causa" para el despido bajo cualquier otra ley, el patrono prueba que éste no fue discriminatorio. *Rivera Aguila v. K-Mart de P.R.*, 123 D.P.R. 599, 609 (1989).

### C.      *Interferencia culposa de contrato*

Finalmente, el recurrido planteó en su demanda que la Sra. Ortiz, quien, como indicamos anteriormente, fue gerente de la sucursal de Walgreens de Ponce en donde trabajaba éste, interfirió intencional e ilegalmente con el contrato laboral que existía entre él y Walgreens, ya que ésta supuestamente lo instigó mediante "una campaña dirigida" en su contra.

En *Gen. Office Prods. v. A. M. Capen's Sons*, 115 D.P.R. 553 (1984), reconocimos por primera vez que el artículo 1802 del Código Civil de Puerto Rico permite la acción por interferencia culposa de terceros con obligaciones contractuales ajenas. Es decir, una acción en daños contra un tercero que, con intención cuasidelictual o culposa, interfiere con las relaciones contractuales de otro. Decimos cuasidelictual o culposa, porque la doctrina exige que, para incurrir en responsabilidad, el tercero que interfiere debe **saber** que ha de producirse la lesión. L. Diez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 3ra ed., Madrid, Ed. Tecnos, 1982, Vol. II, pág. 109. Asimismo, hemos expuesto que la responsabilidad del tercero que interfiere con el contrato es compartida solidariamente con el contratante que, a sabiendas, lo incumple. *Ibíd*.

Los elementos constitutivos de la acción son cuatro; a saber, debe probarse 1) la existencia de un contrato; 2) que medió culpa, es decir, que

---

[15] Sin embargo, ello ha de efectuarse mediante preponderancia de la prueba, lo que representa un *quantum* mayor de prueba que el que se exige en la jurisdicción federal. En ese sentido, la legislación local le es más favorable al empleado, pues requiere del patrono una prueba más vigorosa para rebatir la presunción de discrimen. *Ibáñez, supra*, pág. 54.

el tercero actuó intencionalmente, con conocimiento de la existencia del contrato y que, al interferir con éste, se causaría perjuicio; 3) que se ocasionó un daño; y 4) un nexo causal entre el daño y el acto culposo, o sea, que el daño fue consecuencia de la actuación culposa del tercero. *Dolphin Int'l of P.R. v. Ryder Truck Lines*, 127 D.P.R. 869, 879 (1991).

Con ese marco jurídico en mente, pasamos a examinar el mecanismo procesal de sentencia sumaria.

III

La moción de sentencia sumaria es aquella que solicita que se dicte sentencia a favor del promovente, basándose en la prueba que a la moción se acompaña, sin necesidad de que se celebre vista en su fondo, y en casos donde en realidad no exista controversia real sobre ningún hecho material en el caso.[16] Es decir, que si el juzgador estima que no hay hechos medulares en controversia, y el pleito únicamente presenta cuestiones de derecho, podrá disponerse del asunto mediante sentencia sumaria. *Pérez v. Concepción*, 104 D.P.R. 83 (1975); *Padín v. Rossi*, 100 D.P.R. 259 (1971); *R & R Shoe Corp. v. García Rodríguez*, 95 D.P.R. 571 (1967). El mecanismo de sentencia sumaria responde al propósito de aligerar la conclusión de los pleitos eliminando el juicio en su fondo, pero siempre y cuando no exista una legítima disputa de hecho a ser dirimida, de modo que lo restante sea aplicar el derecho solamente. *Caquías v. Asoc. Res. Mansiones Río Piedras*, 134 D.P.R. 181 (1993); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720-721 (1986); *Roth v. Lugo*, 87 D.P.R. 380, 392 (1963).

La Regla 36.3 de las de Procedimiento Civil, *supra*, establece que se podrá dictar sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostrasen que no hay controversia real sustancial en cuanto a ningún hecho medular y que, como cuestión de derecho, debe dictarse sentencia sumaria a favor de la parte promovente. A diferencia de otras —tales como la moción de desestimación— la moción de sentencia sumaria no se considera a base de las alegaciones solamente, como regla general, sino a base de declaraciones

juradas y otros documentos admisibles como evidencia.[17] Procede aunque se hayan alegado hechos que aparenten estar en controversia, pero cuando el promovente logre demostrar preponderantemente, y mediante dicha prueba documental, que en el fondo no existe controversia sobre los hechos medulares. En tales casos, la parte promovida tiene que defenderse de la misma forma, es decir, apoyándose a su vez de documentos u otra evidencia admisible. En otras palabras, la parte contraria no puede descansar solamente en las aseveraciones contenidas en sus propias alegaciones, sino que viene obligada a contestar la solicitud del promovente de forma detallada y específica, y con prueba.[18] "De no hacerlo así, se dictará sentencia en su contra . . . si procediere". Regla 36.5, *supra*; *Piñero v. A.A.A.*, res. el 23 de octubre de 1998, 146 D.P.R. __, 98 T.S.P.R. 141, 98 J.T.S. 140, pág. 216. En fin, es necesario demostrar afirmativamente que se cuenta con evidencia aceptable, admisible y suficiente para ser presentada en un juicio. Y también se requiere que se presenten hechos que sean admisibles como evidencia en un juicio. *Id*. El promovido simplemente no puede cruzarse de brazos y descansar en las aseveraciones de sus escritos judiciales. *Sánchez v. Aut. de los Puertos*, res. el 7 de marzo de 2001, 153 D.P.R. __, 2001 T.S.P.R. 30, 2001 J.T.S. 34. Tiene la obligación de formular una oposición sustentada con prueba adecuada en derecho.

Ahora bien, siempre hemos advertido enfáticamente que el sólo hecho de no presentar evidencia que controvierta la presentada por la parte promovente no implica que la sentencia sumaria procederá automáticamente. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881, 913 (1994); *Rivera* et al. v. *Superior Pkg., Inc*. et al., 132 D.P.R. 115 (1992); *Consejo Tit. C. Parkside v. MGIC*

---

[16] R. Hernández Colón, *Derecho Procesal Civil* § 2612, pág. 205 (1997).

[17] Existen en esencia dos (2) modalidades de sentencia sumaria, a saber: la primera es aquella que se dicta a base de documentos ofrecidos por el promovente que, a su vez, demuestran una ausencia de controversial real sobre los hechos medulares del caso, y en donde sólo se requiere aplicar el derecho; la segunda es aquella que se dicta cuando, luego de un descubrimiento de prueba exhaustivo, se determina que la prueba existente no es suficiente o adecuada para sostener las alegaciones de la demanda y los elementos esenciales de la reclamación, y, por ende, corresponde desestimar la misma. Esta última modalidad se conoce como sentencia sumaria por insuficiencia de la prueba. Véase *Medina v. M.S. & D. Química P.R., Inc.*, 135 D.P.R. 716 (1994).

[18] Como cuestión de hecho, la evidencia utilizada con más frecuencia es la declaración jurada. Hernández Colón, *op. cit.*, § 2617, pág. 209. Cabe

*Fin. Corp.*, 128 D.P.R. 538 (1991); *Cuadrado Lugo v. Santiago Rodríguez*, 126 D.P.R. 272 (1990); *Flores v. Municipio de Caguas*, 114 D.P.R. 521 (1983).

Asimismo, hemos subrayado que este mecanismo es un remedio discrecional extraordinario que únicamente se concederá cuando la evidencia que se presente con la moción establezca con claridad —es decir, preponderantemente— la existencia de un derecho, de manera que sólo procederá en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, pág. 912; *Corp. Presiding Bishop CJC of LDS v. Purcell*, supra.

Siendo la sentencia sumaria un remedio discrecional, el principio rector para su utilización es el sabio discernimiento del juzgador, ya que, mal utilizada, puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido procedimiento de ley. *Roig Com. Bank v. Rosario Cirino*, 126 D.P.R. 613, 617 (1990).[19] Cualquier duda acerca de la existencia de una controversia real sobre los hechos medulares del caso deberá resolverse contra la parte que la solicita. *Cuadrado Lugo v. Santiago Rodríguez*, supra, pág. 279.

Cónsono con lo anterior, hemos resuelto que existen litigios y controversias que, por su naturaleza, no resulta aconsejable resolverlos mediante una sentencia dictada sumariamente; ello, en vista de que, en tales casos, un tribunal difícilmente podrá reunir ante sí toda la verdad de los hechos a través de affidávits, deposiciones o declaraciones juradas. *Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294, 311 (1994); *García López v. Méndez García*, 88 D.P.R. 363, 379 (1963). Inclusive, hemos identificado como posibles controversias de esta naturaleza aquéllas que contienen elementos subjetivos, es decir,  aquéllas en las que el factor credibilidad juegue un papel esencial o decisivo para llegar a la verdad, y donde un litigante dependa "en gran parte

señalar que la Regla 36.5 de las de Procedimiento Civil, supra, contiene disposiciones específicas en cuanto a las declaraciones juradas.

[19] A esos efectos, cuando una parte solicite una sentencia sumaria, el juzgador deberá efectuar un sencillo análisis de dos partes: 1) deberá primeramente examinar si los hechos alegadamente controvertidos pueden considerarse **medulares o centrales** al pleito (o sea hechos "materiales", como expresa la Regla 36); y 2) deberá luego determinar si, en efecto, existe controversia **real** sobre dichos hechos.

de lo que extraiga del contrario en el curso de un juicio vivo". *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 D.P.R. 563, 577 (1997). Específicamente, hemos establecido que en "los casos en que se plantea si hay o no negligencia . . . o en los que resulta importante determinar el estado mental . . . ,de ordinario no deben resolverse por la vía sumaria". *Cuadrado Lugo v. Santiago Rodríguez*, *supra*. Asimismo, hemos apuntado que, en el sano ejercicio de su discreción, un tribunal no debe resolver sumariamente casos complejos o casos que envuelven cuestiones de interés público. *Id.*, pág. 280.

En esa vena, conocida es la política pautada por este Tribunal de que, como regla general, no se favorece la adjudicación sumaria en casos de discrimen en el lugar del trabajo, ya que, de ordinario, contienen elementos subjetivos y de intención, en donde hay que hacer determinaciones basadas en la credibilidad de varios protagonistas. Véanse *Rodríguez Meléndez v. Sup. Amigo, Inc.*, 126 D.P.R. 117 (1990)(discrimen por razón de sexo); *Soto v. Hotel Caribe Hilton*, *supra*, pág. 302 (discrimen por razón de edad). Hemos insistido vez tras vez que dicha norma es de fundamental importancia toda vez que las reclamaciones de discrimen en el empleo en nuestra jurisdicción están revestidas de un "alto interés público". *Id.*, pág. 306. **Hoy reiteramos y reafirmamos dicha norma**, puesto que reconocemos su fundamental importancia para la obtención soluciones ecuánimes en las reclamaciones laborales por discrimen.

IV

Ahora bien, no podemos pasar por alto que los hechos en el caso de autos plantean unas circunstancias muy particulares, también revestidas de un alto interés público. A saber, el presente caso trata acerca de una ocupación altamente reglamentada en nuestra jurisdicción –la farmacia. El presente caso requiere, pues, que al adjudicar se concuerden, en lo posible, estos dos intereses importantes.

El ejercicio de la farmacia en Puerto Rico está reglamentado por la Ley Núm. 282 de 15 de mayo de 1945, según enmendada, conocida como la "Ley de Farmacia de Puerto Rico", 20 L.P.R.A. sec. 381 *et seq*. La sección 3 de dicha ley en lo pertinente dispone que "farmacéutico" es la "persona autorizada por

el Secretario de Salud para ejercer la profesión farmacéutica, preparar, fabricar, distribuir y vender productos farmacéuticos, productos químicos, medicinas, drogas y venenos". 20 L.P.R.A. sec. 382.[20] Mediante dicha ley se dispuso la creación de una Junta de Farmacia para que reglamente la profesión y la supervise. Concretamente, la Junta de Farmacia es el organismo administrativo que tiene facultad para suspender, revocar o cancelar la licencia de cualquier farmacéutico, a base de las múltiples causas que enumera su reglamento y la Ley de Farmacia.

La sección 24 de la Ley de Farmacia dispone claramente que actuar en contravención a la misma constituye delito menos grave. 20 L.P.R.A. sec. 403. Por su parte, la parte V, artículo 1(b)(6) y (7) del Reglamento General de la Junta de Farmacia de Puerto Rico dispone que "[l]a Junta podrá denegar, suspender o revocar una licencia o certificado cuando haya determinado que el farmacéutico o auxiliar de farmacia ha incurrido en . . . casos en los cuales **su conducta profesional**, sus actuaciones o condiciones físicas **constituyan un peligro para la salud pública**. . . . [Y e]n caso[s] de **negligencia o conducta profesional impropia** cuando actúa como farmacéutico preceptor a tenor de las leyes y reglamentos de [la] Junta". (Énfasis suplido.)[21] De todo lo anterior se despunta el hecho de que la industria farmacéutica es una altamente reglamentada, y además que la responsabilidad impuesta a los farmacéuticos licenciados ciertamente es seria.

---

[20] Por su parte, el Artículo 4 de la Parte I del Reglamento General de la Junta de Farmacia de Puerto Rico dispone, que farmacéutico es la "[p]ersona autorizada por la Junta de Farmacia para ejercer la profesión de farmacia, preparar, fabricar, distribuir, vender productos farmacéuticos, productos químicos, medicinas, drogas y venenos". Cabe señalar también que tanto la Ley como el Reglamento establecen los requisitos necesarios para ejercer la profesión.

[21] Cabe destacar también la existencia del "Reglamento del Secretario de Salud Núm. 91 para reglamentar la operación de los establecimientos dedicados a la manufactura, producción, venta y distribución de drogas y productos farmacéuticos", Reglamento Núm. 5881 del 18 de noviembre de 1998. Dicho reglamento fue aprobado por la referida agencia para reglamentar la operación de los establecimientos dedicados a la manufactura, producción, venta y distribución de drogas y productos farmacéuticos, conforme a la autoridad concedida por la Ley de Farmacia de Puerto Rico, *supra*, y las disposiciones federales aplicables establecidas en el "Prescription Drug Marketing Act of 1987". Pub.L. No. 100-293, 102 Stat. 95, codificado en distintas secciones de 21 U.S.C. secs. 301, 331, 333, 353 y 381.

Un examen de las conclusiones de hecho del TPI sobre los cuales no existe una controversia real, establece que:

a) El contrato laboral entre Walgreens y el recurrido "era uno terminable [por] voluntad de las partes", es decir, **era un contrato sin término fijo.**

b) En 27 de agosto de 1987, al inicio de la relación laboral, el recurrido recibió documentación escrita que indicaba claramente cuál era, y es, "la política pública de descuento de la compañía". Éste acreditó con su firma haber recibido copia de la misma. Dicha documentación advertía a los empleados que "no podrán otorgar descuentos a familiares no inmediatos o amigos, a menos que dicho descuento haya sido previamente aprobado por el gerente". La documentación indica claramente, además, que violar dicha norma constituía **un acto "deshonesto". Y el recurrido violó dicha norma pues "otorgó descuentos no autorizados".**

c) El recurrido **permitió que una compañera y coempleada "se [l]levara 100 pastillas de Fioricet genérico, a sabiendas de que dicho medicamento no se puede despachar sin receta por tratarse de un medicamento clasificado como Control II".**

d) El 9 de octubre de 1993 el recurrido expidió "un medicamento **sin verificar que faltaban firmas en la receta del medicamento lo cual era necesario por tratarse de una receta de narcótico clasificado como Control II".**

e) En noviembre de 1994, el recurrido "**fue amonestado de forma verbal y escrita por [una] falta en sus labores como licenciado** en el recetario luego de que en una auditoria realizada por el Sr. José Tirado, Especialista de Prevención de Pérdidas de Walgreens, reveló que **el [recurrido] no había seguido las políticas de despacho de medicamentos de la farmacia.** En la referida auditoría se encontraron **recetas sin firmar y sin dirección.** En el inventario perpetuo **se encontró un descuadre** en Demerol 100 mg, Demerol 50 mg y Demerol 25 mg, fuera del orden de fechas y pasadas a lápiz, en vez de estar en orden cronológico, al día y en tinta indeleble. A raíz de estos incidentes, **se le señal[ó]** al [recurrido] que parte de sus funciones como licenciado era verificar firmas, fechas y dirección en las recetas, así como las firmas de los licenciados en los registros de los planes médicos y los registros para las repeticiones de medicamentos".

f) El 6 de diciembre de 1994 el recurrido verificó una receta a un cliente de apellido Cartagena y notó que la misma había sido alterada a pesar de que ello era evidente y que aparecía el medicamento Demerol con un tipo de letra distinta. Este hecho surgió luego de que el médico que autorizó la receta, el Dr. José Quiles, llamó a Walgreens para informar que poseía evidencia de que su paciente había alterado dicha receta autorizada por éste.[22]

g) Aproximadamente un mes antes de su destitución, en 8 de agosto de 1995, el recurrido recibió de un cliente una receta médica autorizando la expedición del fármaco denominado Percocet. Éste, empero, **le expidió un medicamento distinto,** y a más de esto, "**no tomó las medidas pertinentes para remediar dicho**

---

[22] Véase Apéndice, pág. 500.

**error".** Es decir, **no se comunicó con el cliente para verificar su estado de salud.**

h) El recurrido fue suspendido de empleo y sueldo el 14 de septiembre de 1995.

i) "El 20 de septiembre de 1995, el Sr. José Matos se reunió con el Sr. Jusino, el Sr. Sigfredo Carrero, el Lcdo. Roberto Ortiz y la Lcda. Iris Ortiz en la referida farmacia de Ponce. En esa ocasión, el Sr. Matos confrontó al Sr. Jusino con varias alegaciones de irregularidades en el área de recetario de la farmacia". Y en dicha reunión, inclusive, el recurrido **"admitió haber cometido una serie de faltas de trabajo"**. Ese día fue despedido. Tenía 62 años de edad.

j) **Al momento del despido, estaba en vigor un manual de orientación para empleados titulado "Personnel Policy"** –con versiones tanto en español como en inglés— en el cual se indica cuál es el procedimiento disciplinario a seguir en casos de despido. El manual advierte específicamente "que no se despedirá a un empleado por una sola violación", sino que antes de ser despedido, deberá haber recibido "una amonestación oral, una advertencia escrita y una suspensión sin paga". No obstante, **indica que un empleado "podrá ser despedido inmediatamente en los casos expresamente indicados en los** manuales" como, por ejemplo, beber licor o usar narcóticos durante las horas de trabajo, **cometer fraude, incurrir en conducta deshonesta o actuar negligentemente.**

k) "Luego del despido del [recurrido], empleados más jóvenes contin[uaron] realizando las funciones que él llevaba a cabo".[23]

Estos hechos surgen de los documentos juramentados que sometió Walgreens al TPI cuando presentó moción de sentencia sumaria el 21 de junio de 1999. Es decir, Walgreens apoyó sus alegaciones y su solicitud de sentencia sumaria con declaraciones juradas, y proveyó prueba suficiente, adecuada, y admisible, tal como lo exige la Regla 36, *supra*. Ante dicha prueba el recurrido simplemente no podía cruzarse de brazos, sino que tenía la obligación de oponerse, a su vez, con declaraciones juradas y documentación detallada y específica, que pudiese controvertir los hechos alegados por Walgreens. Sin embargo, éste se limitó meramente a formular alegaciones insubstanciales en contra de Walgreens. Por tanto, es obvio que falló en cumplir la ineludible responsabilidad procesal que le imponía la Regla 36 de las de Procedimiento Civil, *supra*, de oponerse con declaraciones juradas y documentación detallada, para controvertir los hechos alegados por Walgreens. Por ende, como cuestión de derecho, procedía dictar sentencia sumaria.

---

[23] Véase Sentencia del TPI, Apéndice, págs. 35–37.

No podemos cerrar nuestros ojos ante la manera de proceder, tan negligente, del recurrido en el cumplimiento de sus responsabilidades como farmacéutico licenciado y particularmente por su descuidado desempeño en una droguería que brinda servicio a una comunidad entera. Al igual que el TPI, somos del criterio que las faltas cometidas por el recurrido fueron de tal naturaleza, tan graves, tan serias, tan lesivas al buen orden de la empresa, que hubiese resultado imprudente o negligente que Walgreens esperara su repetición para actuar. *Delgado Zayas v. Hosp. Med. Avanzada*, *supra*. Con su conducta, el recurrido demostró mal juicio, deshonestidad y una grave falta de cuidado en el desempeño de su labor. Sin duda, su conducta profesional fue impropia.

Asimismo, coincidimos enteramente con el TPI en que la conducta del recurrido llegó al punto de poner en riesgo la salud de los clientes de Walgreens. El recurrido se desempeñaba como farmacéutico licenciado, función revestida de un alto interés público, que exige de aquellos que la realizan que lo hagan dentro de los más altos estándares de cuidado. Expender medicamentos equivocados sin tomar luego las medidas de precaución para prevenir algún daño, y despachar medicinas sin que haya mediado receta alguna que las autorice, ciertamente constituye conducta de naturaleza grave. Los hechos específicos del presente caso avalan la conclusión de que una simple amonestación no hubiese sido suficiente.[24] La conducta del recurrido no tan sólo atentaba contra el buen funcionamiento de la empresa, sino que ponía en riesgo la salud y vida de los clientes de Walgreens. Su conducta profesional y sus actos constituyeron un peligro para la salud pública.

Walgreens demostró, mediante evidencia documental irrefutada, que el recurrido cometió, en varias ocasiones, faltas cuya intensidad de agravio justificaban su destitución. El proceder de Walgreens fue necesario para proteger la buena marcha de la empresa, la seguridad y el bienestar de las personas que allí laboran, y particularmente de los clientes a quien Walgreens le brinda servicio diariamente.

Por tanto, con relación a la causa de acción bajo la Ley 80, somos del criterio de que Walgreens logró demostrar clara y preponderantemente, mediante prueba documental adecuada, la existencia de justa causa para el despido del recurrido.

Además, con respecto a la reclamación de discrimen por edad bajo la Ley 100, toda la prueba apunta claramente a que la razón del despido del recurrido de modo alguno se debió a razones discriminatorias a causa de su edad; al contrario, surge de los documentos ofrecidos por Walgreens que su despido se debió a un desempeño sumamente negligente. El recurrido no ha ofrecido prueba en contrario; por ello, creemos, al igual que el TPI, que quedó controvertida la presunción de discrimen.

Finalmente, la causa de acción del recurrido por interferencia culposa de contrato por parte de tercero no puede proceder por la razón de que, en el caso de autos, la Sra. Ortiz sencillamente no puede ser considerada como un tercero. La Sra. Ortiz, como indicamos anteriormente, ocupaba la posición de Farmacéutico Regente en la tienda de Walgreens de Ponce donde laboraba el recurrido. Según se han definido y descrito las funciones de dicha posición,[25] el Farmacéutico Regente goza de amplios poderes y significativas responsabilidades en Walgreens.

Sabido es que, conforme al derecho mercantil, en el ejercicio y desarrollo de una empresa, ésta necesita valerse del concurso de personas que colaboren en su funcionamiento. Nos referimos a los auxiliares subordinados de la empresa, o sea, sus representantes. Empero, dentro de esa categoría, se debe distinguir siempre entre los colaboradores tipo factor, y los meros dependientes. Rodrigo Uría, *Derecho Mercantil*, sexta edición, Madrid, pág. 44 (1968). La primera categoría es la que nos concierne en el presente caso. Los colaboradores tipo factor son aquellas personas que, en mayor o menor medida, participan en la actividad empresarial de relación contractual con terceros. *Íd*. Es decir, son aquellos que gozan del poder representativo frente

---

[24] Debemos advertir que **el recurrido sí fue amonestado** previamente por su desempeño negligente, según surge de la prueba documental que acompañó a su solicitud de sentencia sumaria. Apéndice, pág. 470.

[25] Nota al calce núm. 3, *supra*.

a terceros, aunque en grados distintos, por lo que quedan excluidos aquellos "colaboradores dependientes que ejercitan tareas puramente internas, cuya realización no ha de llevar consigo una actividad externa de contratación con terceros . . .". Fernando Sánchez Calero, *Instituciones de Derecho Mercantil*, novena edición, pág. 116 (1982). Específicamente, el Código de Comercio denomina a esta clase de colaboradores empresariales como "factor".[26] Y el factor es considerado por la doctrina como un *alter ego* de la compañía. F. Sánchez Calero, *op. cit.*, pág. 117; R. Uría, *op. cit.*, pág. 44. Lo que implica, pues, es que, a todos los fines jurídicos, la empresa y el factor son la misma persona. V*éase además Soc. de Gananciales v. TOLIC*, res. el 30 de junio de 2000, 151 D.P.R. ___, 2000 T.S.P.R. 115, 2000 J.T.S. 125.

En el caso de autos, la Sra. Ortiz corresponde a dicha clase de colaborador empresarial. Ésta no tan sólo supervisaba a los farmacéuticos auxiliares de la sucursal de Walgreens en cuestión, sino que tenía la responsabilidad de verificar que los farmacéuticos aspirantes cumpliesen los requisitos para ocupar dicha posición. También tenía la importante tarea de entrevistar a los aspirantes conjuntamente con el Gerente general de la tienda. Asimismo, participaba en el proceso de evaluaciones periódicas de los farmacéuticos auxiliares, y era además la encargada de los asuntos disciplinarios en el recetario. En vista de las funciones que ella desempeña, es forzosa la conclusión de que cumple con la amplia definición de factor. Máxime cuando sus tareas no se limitaban a aquellas que eran puramente internas. Claramente, su labor como Farmacéutico Regente llevaba consigo "una actividad externa de contratación con terceros",[27] una responsabilidad que compartía en cierta medida con el Gerente o apoderado general de la sucursal de Walgreens en cuestión.[28] El derecho mercantil admite la existencia de más de un factor. F. Sánchez Calero, *op. cit.*, pág. 117. El puesto de Gerente General y el de

---

[26] El Código de Comercio dispone en su artículo 201 que "[e]l gerente de una empresa . . . tendrá el concepto legal de factor . . .". 10 L.P.R.A. sec. 1573.

[27] F. Sánchez Calero, *op. cit.*, pág. 116.

[28] El Sr. Sigfredo Carrero se desempeñaba como Gerente de la Farmacia Walgreens en la Calle Estrella de Ponce, durante el año 1995, cuando fue destituido el recurrido. Apéndice, pág. 500.

Farmacéutico Regente son complementarios y ambos revisten responsabilidades de importancia en la empresa.

En vista de nuestra conclusión de que la Sra. Ortiz es factor, forzoso es concluir que ésta era un *alter ego* de Walgreens; o sea, que para propósitos del presente caso, Walgreens y ésta son la misma persona jurídica y, por tanto, no se le puede considerar tercero. *Ergo*, es improcedente invocar la doctrina de interferencia contractual culposa de tercero en el presente caso.

Por todo lo anterior, el TPI actuó correctamente al dictar sentencia sumaria en el caso de autos.

V

Se dictará sentencia revocando la dictada por el Tribunal de Circuito de Apelaciones el 22 de mayo de 2000 y dejando en vigor, en su totalidad, la sentencia dictada sumariamente por el Tribunal de Primera Instancia el 4 de octubre de 1999, que desestimó cada una de las reclamaciones del recurrido.


BALTASAR CORRADA DEL RIO
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ubaldino Jusino Figueroa
*et als*.

    Recurridos

       v.

Walgreens of San Patricio          CC-2000-645
Inc., y otros

    Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 1 de noviembre de 2001.

    Por los fundamentos expuestos en la Opinión que antecede, la cu
se hace formar parte íntegra de la presente, se revoca la senten
dictada por el Tribunal de Circuito de Apelaciones el 22 de mayo
2000 y se deja en vigor, en su totalidad, la sentencia dicta
sumariamente por el Tribunal de Primera Instancia el 4 de octub
de 1999, que desestimó cada una de las reclamaciones del recurri

    Lo pronunció, manda el Tribunal y certifica la Secretaria
Tribunal Supremo. La Juez Asociada señora Naveira de Rodón
intervino.

                                    Isabel Llompart Zeno
                           Secretaria del Tribunal Supre