# 2008 DTA 115

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL IV**

MARGARITA ORTIZ OTERO
Apelante

v.

TLD DE PUERTO RICO, INC., TLD DE PUERTO RICO,
FULANO DE TAL, ZUTANO DE TAL
Apelados

Núm. KLAN-2008-00184

San Juan, Puerto Rico, a 18 de septiembre de 2008

Panel integrado por su Presidente, el Juez López Feliciano,
la Juez Pabón Charneco y el Juez Hernández Serrano

López Feliciano, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La apelante Margarita Ortiz Otero, comparece ante este Tribunal de Apelaciones solicitando que revoquemos una sentencia emitida el 14 de diciembre de 2007 por la Sala Superior de San Juan del Tribunal de Primera Instancia (TPI). Mediante dicha sentencia, el TPI declaró con lugar la demanda instada por despido injustificado y sin lugar en cuanto a la causa de acción basada en discrimen por razón de edad.

### I

A continuación, un resumen de los hechos que originan este recurso.

La apelante trabajó como empleada de la Telefónica Larga Distancia de Puerto Rico, Inc. (TLD) desde el 23 de diciembre de 1992 hasta el 11 de enero de 2002.

Allá para el 11 de enero de 2002, la apelante ocupaba un puesto de Cobradora en el Departamento de Facturación y Cobros, bajo la supervisión directa del señor José A. Torres (señor Torres), Gerente de ese Departamento. Devengaba un salario de $11.93 por hora y un Bono de Navidad de un 5% de su salario anual.

En julio de 2001, el señor Torres sometió a TLD un certificado médico en el que se hacía constar que estaba sufriendo de depresión mayor. Su condición empeoró, por lo que finalmente, el 10 de octubre de 2001, se le diagnosticó depresión con ataques de pánico y se le recomendó hospitalización. En la referida fecha, el señor Torres se acogió a la licencia por incapacidad no ocupacional. No regresó a su empleo, por lo que, luego de transcurrir un año de reserva de empleo provisto bajo la licencia del Seguro por Incapacidad No Ocupacional para Trabajadores, se dio por terminado su empleo en TLD, efectivo el 10 de octubre de 2002.

En octubre de 2001, una vez el señor Torres se acogió a la licencia por incapacidad no ocupacional y dejó vacante el puesto de Gerente de Facturación y Cobros, la señora Victoria Medina (señora Medina), Gerente General de TLD, pasó a ejercer algunas de las funciones de dicho puesto, incluyendo las de supervisar directamente a la apelante.

Como consecuencia de la prolongada ausencia del señor Torres y la necesidad de tener a una persona que supervisara a los empleados del área de cobros, TLD creó el puesto de Supervisor de Cobros.

Por tal razón, el 11 de noviembre de 2001 se publicó en el periódico El Nuevo Día un anuncio para reclutamiento en el puesto de Supervisor de Cobros, detallando los requisitos mínimos del mismo e indicando que los interesados debían enviar su resumé, acompañado de evidencia de preparación académica, al Departamento de Recursos Humanos de TLD. Entre los requisitos mínimos de dicha plaza estaba el *"Poseer Bachillerato en Administración de Empresas de una Institución acreditada y cuatro (4) años de experiencia, de los cuales tres (3) fuesen en Cobro y uno (1) en Supervisión"*.

Así las cosas, la apelante solicitó la referida plaza de Supervisor de Cobros y le sometió al Departamento de Recursos Humanos de TLD copia de su resumé. No obstante, de éste no surgía que cumpliera con el requisito mínimo de poseer un año de experiencia en supervisión.

De igual manera, en noviembre de 2001, el señor Gustavo A. Freyre Conde (señor Freyre) también solicitó la referida plaza. Del resumé sometido por éste surgía que desde el 1997 hasta la fecha en que solicitó la plaza de Supervisor de Cobros, se había estado desempeñado como Supervisor de Cobros en la compañía American Express TRS, Inc., en Hato Rey. También surgía que tenía ocho años de experiencia en el área de facturación, cobros y cuentas por cobrar, y que reunía los demás requisitos mínimos del puesto de Supervisor de Cobros.

Examinada la solicitud presentada y luego de realizada una entrevista, la señora Medina seleccionó al señor Freyre para ocupar la referida plaza. Éste aceptó la oferta hecha por la señora Medina el 17 de diciembre de 2001, por lo que comenzó a trabajar en período probatorio ese mismo día.

Por otro lado, y previo a lo anterior, el 7 de noviembre de 2001, la apelante le había sometido a su entonces supervisora interina, la señora Medina, una solicitud de vacaciones regulares, comenzando el 20 de diciembre de 2001 hasta el 4 de enero de 2002.

La señora Medina le había dado el visto bueno a dicha solicitud y la misma se había sometido al Departamento de Recursos Humanos el 8 de noviembre de 2001. Las vacaciones solicitadas comprendían diez días laborables, a saber: los días 20, 21, 24, 26, 27, 28 y 31 de diciembre de 2001, y los días 2, 3 y 4 de enero de 2002, debiéndose la apelante reportar de regreso a su trabajo el primer día hábil siguiente, a saber: el martes 8 de enero de 2002. **[1]**

No obstante, a solicitud del señor Freyre, la apelante trabajó el jueves 20 de diciembre de 2001. La apelante le notificó a la señora Annya Lugo (señora Lugo), empleada del Departamento de Recursos Humanos de TLD, que había trabajado ese día completo, a pesar de tener autorizadas sus vacaciones comenzando dicho día. Ésta le indicó que por ello se le extendía un día de vacaciones. Sin embargo, no solicitó del señor Freyre ni de la señora Medina autorización para extender su período de vacaciones por un día laborable para compensar el día que había trabajado. **[2]**

TLD decidió concederle libre a todos sus empleados el lunes 24 de diciembre de 2001, con paga y sin cargo a vacación alguna. La apelante advino en conocimiento de esto. Sin embargo, no solicitó autorización del señor Freyre ni de la señora Medina para extender su período de vacaciones por un día laborable adicional para compensar ese día.

El 10 de enero de 2002, la señora Lugo fue a la oficina del señor Freyre a inquirirle si había recibido comunicación de la apelante, ya que se suponía que se reintegrara al trabajo el 8 de enero de 2001, luego de sus vacaciones, y sin embargo, no se había reportado aún. Tampoco se había comunicado con TLD ni había dado explicación alguna para su ausencia. Por tal razón, el señor Freyre acudió a la señora Medina, quien tampoco tenía conocimiento alguno de las razones para la ausencia de la apelante.

El 11 de enero de 2002, se reunieron en las oficinas del Departamento de Recursos Humanos de TLD la apelante, el señor Freyre y el señor Miguel Machuca (señor Machuca). En la referida reunión, la apelante intentó entregarle al señor Machuca un certificado médico. No obstante, éste no aceptó el mismo, por considerarlo tardío y procedió a entregarle la carta de despido.

La apelante solicitó la reconsideración de su despido a la señora Medina, pero ésta rehusó reconsiderar la decisión.

En consecuencia, el 13 de agosto de 2004, la apelante presentó en el TPI una querella contra TLD, Telefónica Larga Distancia de Puerto Rico, Fulano de Tal y Zutano de Tal, al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. sec. 3118 *et. seq* (Ley Núm. 2). Alegó haber sufrido discrimen por razón de edad por parte de su supervisor directo, además de represalias por haber objetado dicho discrimen. Añadió que dicho patrón de discrimen por razón de edad y dichas represalias habían culminado con su despido, alegadamente injustificado. A tales efectos, solicitó remedios al amparo de la Ley Núm. 100, *infra,* y la Ley Núm. 80, *infra.*

El 30 de agosto de 2004, TLD presentó su contestación a la querella. En síntesis, negó que el despido de la apelante hubiera sido injustificado o discriminatorio. Señaló que el despido se debió a que la apelante violó los reglamentos de la empresa y añadió que ésta nunca fue objeto de discrimen. [3]

Aun cuando la apelante se acogió al procedimiento sumario dispuesto en la Ley Núm. 2, *supra,* las partes convirtieron el procedimiento en uno ordinario.

Luego de los trámites procesales correspondientes, se celebró la vista en su fondo. La misma tuvo lugar los días 21 de febrero, 22 de febrero, 7 de junio, 11 de junio y 24 de septiembre de 2007.

Así el trámite, el 14 de diciembre de 2007, notificada el 9 de enero de 2008, el TPI dictó sentencia en el caso. Determinó que el despido de la apelante fue uno injustificado, ordenándole pagar a TLD la cantidad de $8,891.07, más una cuarta parte por concepto de honorarios de abogado.

Además, declaró sin lugar la causa de acción basada en discrimen por razón de edad, toda vez que entendió que TLD rebatió la presunción de discrimen y la apelante no presentó prueba adicional a los fines de demostrar que las razones dadas por éste eran meros pretextos.

Inconforme, la apelante acude ante este Tribunal.

## II

La apelante plantea que fueron cometidos los siguientes errores en la sentencia apelada:

*"Erró el Tribunal de Primera Instancia al concluir como probados hechos que son erróneos o que no representan el balance más racional, justiciero y jurídico de las pruebas.*

*Erró el Tribunal de Primera Instancia al negar darle el justo valor a la presunción que dispone la Ley 100 sobre discrimen y a su vez resolver que el patrono rebatió la misma sin que la querellante aportara prueba adicional que probara que la misma constituye un pretexto."*

En síntesis, lo que debemos resolver es si el TPI dictó la sentencia apelada de conformidad con el derecho aplicable a la acción instada.

## III

Examinemos el derecho aplicable a las cuestiones planteadas por la apelante.

### A

La Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como *"Ley de Indemnización por Despido Injustificado"*, 29 L.P.R.A. sec. 185 *et seq.* (Ley Núm. 80), tiene como propósito social y coercitivo el sancionar que un patrono despida a sus empleados, salvo que demuestre causa justificada para ello. *Jusino et als. v. Walgreens,* 155 D.P.R. 560 (2001). Además del fin proteccionista que tiene dicha ley, tiene como propósito proveer remedios justicieros y esenciales por los daños que puede haber causado a un cesanteado un despido injustificado. *Beauchamp v. Holsum Bakers of P.R.*, 116 D.P.R. 522, 526 (1985).

En la Ley Núm. 80, *supra*, se crea la presunción de que el despido de un empleado es injustificado y por consiguiente, corresponde al patrono rebatir dicha presunción. Si el patrono opone la defensa de justa causa para el despido, le corresponde inicialmente probar, mediante preponderancia de la prueba, que el despido estuvo justificado. Artículo 8 de la Ley Núm. 80, *supra*, 29 L.P.R.A. sec. 185k; *Díaz v. Wyndham Hotel Corp.*, 155 D.P. R. 364 (2001); *Belk v. Martínez,* 146 D.P.R. 215, págs. 230-231 (1998).

En el Artículo 2 de la Ley Núm. 80, *supra*, se dispone que se entenderá como justa causa para el despido, entre otras: (1) que el obrero siga un patrón de conducta impropia o desordenada; (2) que tenga la actitud de no rendir su trabajo de forma eficiente o de hacerlo tardía y negligentemente o en violación a las normas de calidad del producto que se produce o maneja por el establecimiento; (3) que incurra en violación reiterada de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado. 29 L.P.R.A. sec. 185b (a),(b),(c).

Si luego de presentada la totalidad de la prueba queda demostrado que no hubo ánimo discriminatorio para el despido, pero el patrono demandado no logró establecer una justificación razonable para éste (justa causa), el tribunal deberá concluir que el despido fue injustificado y el empleado será acreedor exclusivamente a los remedios establecidos en la Ley Núm. 80, *supra*. Por ello, es imperativo que el juzgador establezca la intención del patrono al momento de realizar el despido. *Belk v. Martínez, supra.*

Nuestro Tribunal Supremo ha puntualizado que la Ley Núm. 80, *supra*, debe ser interpretada liberalmente a favor de los derechos del trabajador. *Belk v. Martínez, supra,* pág. 232. Esta ley lo que hace es concederle a la persona despedida injustificadamente una compensación dirigida a ayudarlo económicamente durante la etapa de transición del empleo que ocupaba al que pueda en un futuro conseguir. *Ruiz v. Col. San Agustín,* 152 D.P.R. 226 (2000).

En casos bajo la Ley Núm. 80, *supra*, nuestro más Alto Foro particularmente nos ha recordado que la apreciación de la prueba que haga el TPI será respetada y que no debemos intervenir con ella en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Belk v. Martínez, supra.*

### B

La Ley Núm. 100 de 30 de junio de 1959, según enmendada, conocida como *"Ley General contra el Discrimen en el Empleo"*, 29 L.P.R.A. sec. 146 *et seq.* (Ley Núm. 100), le impone al Secretario del Departamento del Trabajo y Recursos Humanos (D.T.R.H.) el deber de velar porque los patronos no discriminen contra los empleados por razón de edad, raza, color, sexo, origen social o nacional, condición social, afiliación política, ideas políticas o religiosas. 29 L.P.R.A. sec. 146. A tales efectos, el Secretario está autorizado a llevar a cabo todas las investigaciones o inspecciones necesarias para determinar si un patrono discrimina contra sus

empleados. 29 L.P.R.A. sec. 150.

Todo empleado que se sienta discriminado por su patrono tiene el derecho a promover una querella en el D.T.R.H. Se dispone en el Artículo 5 de la Ley Núm. 100, *supra,* lo siguiente.

*"Cuando se presente una querella por discrimen en el Departamento del Trabajo y Recursos Humanos, el término prescriptivo de un año para iniciar la acción judicial quedará interrumpido al notificársele la querella al patrono o querellado, siempre y cuando que la notificación se efectúe dentro de dicho término prescriptivo. Dicho término prescriptivo quedará, además, en suspenso o congelado mientras la querella se continúe tramitando en el Departamento del Trabajo y Recursos Humanos y no se haya notificado al querellado la determinación del Secretario de dicho Departamento sobre la reclamación. Si mientras se está tramitando la reclamación en el Departamento del Trabajo y Recursos Humanos, el querellante solicita que se le permita retirar la querella o manifiesta que no desea continuar con dicho trámite, el término prescriptivo antes aludido comenzará nuevamente a partir de la fecha en que el Secretario del Trabajo y Recursos Humanos notifique de su determinación a las partes. En los demás casos, el término prescriptivo se interrumpirá con la reclamación extrajudicial, con la radicación de la acción judicial correspondiente o por el reconocimiento de la deuda por parte del patrono o de su agente autorizado."* 29 L.P.R.A. sec. 150

De otra parte, el Artículo 3 de la Ley Núm. 100 establece la importante presunción de despido discriminatorio, la cual entra en juego durante la etapa probatoria del caso, salvo que se demuestre que existió justa causa para el despido. Sin embargo, nuestro más Alto Foro ha enfatizado que el artículo no altera en su totalidad el esquema probatorio, a los efectos de que, una vez instada la acción judicial, de ordinario, le corresponde a la parte demandante comenzar la presentación de la prueba de sus alegaciones previo a que la parte demandada venga obligada a rebatirla.

El esquema probatorio para la presentación de la prueba en casos de discrimen es el siguiente: le corresponde inicialmente al empleado presentar prueba que sostenga sus alegaciones. En particular, deberá establecer que: (1) hubo un despido o acto perjudicial; (2) que éste se realizó sin justa causa; y (3) algún hecho base que lo ubique dentro de la modalidad de discrimen bajo la cual reclama. *Belk v. Martínez, supra.* Cumplida esta fase inicial, surge la presunción de despido discriminatorio. Las circunstancias o hechos básicos varían según el contexto en que se dé la decisión de empleo y el tipo de discrimen que se alegue. *Díaz v. Wyndham Hotel Corp., supra.*

A partir de este momento, el peso de la prueba recae sobre el patrono, y de éste no presentar prueba alguna, sólo resta dar por probado el caso del empleado y adjudicar los daños. Sin embargo, existe la posibilidad de que el patrono opte por defenderse de varias formas: (1) presentando prueba para rebatir la presunción de despido discriminatorio, (2) o probando que hubo un despido justificado (justa causa); (3) probando que no hubo tal despido; o (4) a pesar de haber habido un despido injustificado, estableciendo que éste no fue discriminatorio.

### C
Es norma general reiterada que las determinaciones de hechos y la adjudicación de credibilidad que hace un tribunal de primera instancia son merecedoras de gran deferencia por parte de los tribunales apelativos. Un tribunal apelativo, de ordinario, no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que ha hecho el juzgador de los hechos, salvo que haya mediado, pasión, prejuicio, parcialidad o error manifiesto. *Vélez v. Baxter,* 166 D.P.R. ___ (2005), **2005 J.T.S. 189**; *Lebrón v. Díaz,* 165 D.P.R. ___ (2005), **2005 J.T.S. 135**; *Álvarez v. Rivera,* 165 D.P.R. ___ (2005), **2005 J.T.S. 90**; *López v. Dr. Cañizares,* 163 D.P.R. 119 (2004).

### IV
Apliquemos el derecho antes expuesto a los planteamientos que contra la sentencia hace la apelante.

Señala en su primer error la apelante que aun cuando en justicia la mayoría de las determinaciones de hechos del TPI recogen adecuadamente la prueba desfilada, varias de éstas no representan el balance más racional, justiciero y jurídico de la prueba.

Por su parte, TLD señala que las determinaciones hechas por el TPI son correctas, pero que, aun de haberse cometido algún error al formularlas, el mismo no alteraría en manera alguna las conclusiones de derecho a las que llegó el foro apelado.

Procede que analicemos cada una de las determinaciones de hechos a las que hace alusión la apelante:

*"Determinación de hecho número 3:*

*3. La demandante ejercía las funciones de Cobradora en el Departamento de Facturación y Cobros, bajo la supervisión directa del señor José A. Torres, Gerente de dicho Departamento, desde el 13 de enero de 1995. En dicha plaza, la demandante tenía a su cargo, entre otras, las cuentas del Gobierno."*

Señala la apelante que testificó que no solamente tenía a cargo las cuentas del Gobierno, sino también de clientes medianos como la banca, farmacéuticas, tribunales y hospitales.

Nótese que la referida determinación hecha por el TPI sí tomó en cuenta que la apelante tenía otras cuentas, además de las cuentas del Gobierno. De ahí que el TPI haya utilizado la *frase "entre otras"*.

*Determinación de hecho número 9:*

*9. Durante los años 1995, 1996, 1997, 19998, 1999 y 2000, el señor José A. Torres evaluó anualmente el desempeño de la demandante, arrojando dichas evaluaciones los resultados finales siguientes:*

*Año 1995: el desempeño fue calificado como "mejorable".*

*Año 1996: el desempeño recibió una puntuación (promedio general) de 2.39, calificado como que: "cumple con la mayoría de los requerimientos".*

*Año 1997: el desempeño recibió una puntuación (promedio general) de 2.57, calificado como que: "cumple con la mayoría de los requerimientos".*

*Año 1998: el desempeño recibió una puntuación (promedio general) de 2.68, calificado como que: "cumple con la mayoría de los requerimientos".*

*Año 1999: el desempeño recibió una puntuación (promedio general) de 3.33, calificado como que: "cumple con los requerimientos consistentemente".*

*Año 2000: el desempeño recibió una puntuación (promedio general) de 3.40, calificado como que: "cumple con los requerimientos consistentemente".*

Alega la apelante que el TPI minimizó el resultado de la evaluación al expresar *"calificado como que cumple con los requerimientos consistentemente"*. Afirma que debió decir *"calificado como superior a 'cumple con los requerimientos consistentemente'"*.

Lo cierto es que la guía de puntuación de TLD, establecida para las evaluaciones contempla lo siguiente:

*"(4) SR= Sobrepasa los requerimientos.*

*(3) CR=Cumple con los requerimientos consistentemente.*

*(2) CM= Cumple con la mayoría de los requerimientos.*

*(1) NC= No cumple con los requerimientos".*

Como puede verse, toda puntuación entre el 3.00 hasta 3.99 es clasifica como *"CR= cumple con los requerimientos consistentemente."* La apelante obtuvo puntuaciones de 3.33 y 3.40 en los años 1999 y 2000 respectivamente, por lo que las mismas deben ser clasificadas bajo esta categoría.

Determinaciones de hechos número 10, 11 y 12:

*"10. La demandante no produjo evidencia alguna de que ella hubiera sometido una querella o queja escrita ante funcionarios de TLD autorizados, o personal del Departamento de Recursos Humanos, sobre el hostigamiento por razón de edad y sobre el discrimen por razón de edad del que estaba siendo objeto por parte del señor José A. Torres.*

*11. La demandante testificó que ella se había quejado de ello ante la señora Raquel Ramos.*

*12. A la fecha de los hechos pertinentes, la citada empleada Raquel Ramos ocupaba el puesto de Oficial de Salud y Seguridad ocupacional en TLD. Como tal, mantenía bajo su custodia los expedientes médicos de los empleados de TLD. Su función se limitaba a archivar documentos que se le entregaban y que debían constar en dichos expedientes."*

La apelante señala que existe evidencia documental que demuestra que llevó a la atención de TLD la alegada persecución sufrida por parte de su supervisor directo, el señor Torres. Afirma que el memorando del año 1998 confirma el hecho de que remitía sus quejas a la señora Raquel Ramos, Oficial de Seguridad Ocupacional, y que la misma sí estaba encargada de evaluar accidentes ocupacionales y reportarlos con el propósito de hacer recomendaciones al empleado y redactar informes de la labor realizada.

No nos cabe la menor duda de que la apelante se querelló por escrito sobre la alegada persecución y actitud hostil del señor Torres. Sin embargo, ninguno de estos escritos alude en manera alguna a un alegado discrimen o discrimen por edad. En otras palabras, dichos escritos lo que evidenciarían sería algún tipo de hostigamiento o persecución, pero no de discrimen.

Por otra parte, del expediente ante nuestra consideración no se desprende que la apelante haya producido ante el TPI documento alguno que evidencie que ésta se había quejado ante Raquel Ramos por el alegado discrimen por razón de edad que sufría por parte del señor Torres. **[4]**

Determinación de hecho número 14:

*"14. En julio de 2001, el señor José A. Torres sometió a TLD un certificado médico donde se hacía constar que el estaba sufriendo depresión mayor. Su condición agravó y finalmente, el 10 de octubre de 2001, se le diagnosticó depresión con ataques de pánico y se le recomendó hospitalización. En dicha fecha, el señor Torres se acogió a licencia por Incapacidad No Ocupacional."*

La apelante alega que la depresión sufrida por el señor Torres se remontaba al año 1997 y que éste había recibido tratamiento en el Fondo del Seguro del Estado, por lo que era lógico concluir que TLD tenía

conocimiento de su condición desde mucho antes del año 2001.

Coincidimos con lo expresado por TLD al señalar que la determinación tomada por el TPI no afirma ni niega que el señor Torres hubiera sufrido de depresión antes de julio de 2001. Es nuestro criterio que el TPI no consideró necesario especificar que éste había manifestado sufrir de dicha condición desde el 1997. Lo anterior nada aporta a la solución correcta de las controversias planteadas.

Determinación de hecho número 21:

*"21. Del resumé de la demandante no surge que ella cumpliera con el requisito mínimo de poseer un (1) año de experiencia en Supervisión."*

Si bien afirma la apelante que efectivamente en su resumé no expresa tener experiencia en supervisión, cuestiona que el TPI no hubiera concluido que ejerció funciones de supervisión en el Departamento de Facturación y Cobros durante la prolongada ausencia del señor Torres, y que por lo tanto, cualificaba para ocupar la plaza de Supervisor de Cobros.

Lo cierto es que, aun cuando el TPI hubiera encontrado probado el hecho de que la apelante llevó a cabo funciones de supervisión durante la ausencia del señor Torres, esto de por sí sólo no la hacía elegible para el puesto.

Del expediente ante nuestra consideración surge que el señor Torres cesó en sus labores en TLD de manera definitiva desde el 10 de octubre de 2001; y el Supervisor de Cobros, el señor Freyre, entró en funciones el 17 de diciembre de 2001. [5] Por lo tanto, aun cuando el TPI hubiera dado por probado que la apelante llevó a cabo funciones de supervisión durante la ausencia del señor Torres, dicho período no sumaba el año necesario que solicitaba TLD como requisito para ser considerada para la plaza de Supervisor de Cobros.

Por último, expresa la apelante que el TPI erró al computar la mesada de la que es acreedora.

El TPI dispuso en su sentencia que la mesada que le correspondía a la apelada era de $8,891.07. Sin embargo, las partes estipularon que el salario anual de ésta era de $24,814.40. A éste se le añadiría el 5% del Bono de Navidad.

Por lo tanto, es nuestra opinión que el TPI computó incorrectamente la mesada, por lo que cometió el error señalado.

En resumen, en el caso de autos, este Tribunal tuvo ante sí la Exposición Narrativa de la Prueba Estipulada de lo acontecido en la vista en su fondo. Un ponderado examen de dicha exposición narrativa nos mueve a coincidir que, a excepción del error cometido al momento de computarse la mesada, los demás errores señalados no se cometieron.

**B**

En su segundo señalamiento de error, la apelante plantea que al TLD no derrotar la presunción de que el despido fue discriminatorio, el TPI quedó obligado por ésta, tal y como lo establece la Ley Núm. 100, *supra.*

Por su parte, TLD afirma que presentó prueba que rebatió todos y cada uno de los hechos expuestos por la apelante para fundamentar el alegado discrimen y que dicha prueba fue creída por el TPI, por lo que debe confirmarse la sentencia apelada.

En relación al proceso probatorio en reclamaciones por despido discriminatorio al amparo de la Ley Núm.

100, *supra*, y la Ley Núm. 80, *supra*, conjuntamente, nuestro Tribunal Supremo, en *Díaz v. Wyndham Hotel Corp., supra*, expresó lo siguiente:

*"...[E]n aras de uniformar el proceso evidenciario bajo ambos estatutos y confirmarlo con el derecho vigente y con las normas procesales que regulan nuestro derecho probatorio y son aplicables a casos de discrimen, se crea una variante o situación especial. Mediante ésta, el empleado demandante, que reclama la protección de ambos estatutos, tiene el deber de alegar en su demanda la ausencia de justa causa, y luego, durante el primer turno de prueba, probar ciertos elementos básicos de su reclamación por discrimen para que quede activada la presunción dispuesta por ley.*

.
.
.

*En reclamaciones por despido discriminatorio por edad específicamente, el demandante tiene que presentar prueba en el primer turno, que tienda a establecer, por ejemplo, que: (i) pertenece a la clase protegida por el estatuto, a saber, su edad; o (ii) que estaba cualificado para ejercer el puesto que ocupaba; o (iii) que fue despedido, o (iv) que fue sustituido por una persona más joven, esto es, algún hecho base que lo ubique dentro de la modalidad de discrimen bajo la cual reclama. Es menester advertir que el empleado no tiene que probar todos y cada uno de estos elementos, ya que, de así requerírsele, se le estaría exigiendo que cumpla con una obligación procesal que no le corresponde llevar a cabo al instar su reclamación por discrimen estrictamente bajo las disposiciones de la Ley Num. 100, ante, local."*

En este caso, la apelante, por acuerdo de las partes, presentó en su primer turno de prueba toda la evidencia relacionada, tanto con su reclamación de despido injustificado como con su reclamación de despido discriminatorio por razón de edad.

Entre la prueba presentada estuvo el testimonio de la propia apelante. Esta declaró ampliamente sobre su relación laboral con TLD, así como la situación que dio lugar al despido. También testificó sentirse discriminada con los comentarios y actitudes del que fuera su supervisor directo, el señor Torres. Por último, testificó sobre los alegados daños sufridos a raíz de los actos de alegado discrimen.

TLD, por su parte, presentó prueba relacionada con el despido de la apelante. En particular, se destacó el testimonio de la señora Medina quien expresó haber despedido a la apelante por haber incurrido en la infracción 39 del Manual del Empleado, esto es, abandono de empleo. Surge de su testimonio que nunca tomó en cuenta dato adicional alguno al momento del despido, con excepción del hecho que la apelante no regresó de sus vacaciones el día en que estaba supuesta a hacerlo. Dicha situación había ocurrido antes, sin que ello hubiera acarreado consecuencia alguna. [6]

La apelante, al haber decidido presentar toda su prueba, debió probar ciertos hechos básicos. Esto es, que fue despedida sin justa causa y que quedó así ubicada dentro de la modalidad de discrimen bajo la cual reclama, de manera que se activara entonces la presunción dispuesta en la ley. Una vez activada, a TLD le correspondía rebatirla.

Sin embargo, no lo hizo. La apelante nunca presentó prueba que demostrara que el despido del que fue objeto fue discriminatorio, por lo que la presunción establecida bajo la Ley Núm. 100, *supra*, no se activó. Si a este hecho, le añadimos que TLD demostró que en el despido de la apelada no medió ningún ánimo de discrimen, resulta forzoso concluir que no erró el TPI al declarar sin lugar la causa de acción bajo la Ley Núm. 100, *supra*.

Como bien señaló nuestro más Alto Foro en el ya mencionado caso de *Díaz v. Wyndham Hotel Corp., supra*:

*"Si luego de presentada la totalidad de la prueba, queda demostrado que no hubo animo discriminatorio o intención discriminatoria en el despido, pero el demandado no logró establecer una justificación razonable para el mismo, esto es, no probó la justa causa, el tribunal deberá concluir que el despido fue injustificado y el empleado será acreedor, exclusivamente, a los remedios establecidos en la Ley Num. 80, ante."*

En ausencia de pasión, prejuicio, parcialidad o error manifiesto, nos vemos imposibilitados de alterar la determinación tomada por el foro apelado. Véase *Vélez v. Baxter, supra; Lebrón v. Díaz, supra; Álvarez v. Rivera, supra; López v. Dr. Cañizares, supra.*

## V

Por los fundamentos antes expuestos, se modifica la sentencia apelada y se devuelve el caso al foro de instancia, a los únicos efectos de que se calcule nuevamente la mesada a la que tiene derecho la apelada. Se confirma en cuanto a los demás extremos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2008 DTA 115

**1.** El lunes 7 de enero de 2002 era feriado por ser domingo el 6 de enero de 2002.

**2.** La apelante comenzó sus vacaciones regulares el viernes 21 de diciembre de 2001.

**3.** La apelante no emplazó a nadie más, por lo que TLD permaneció como única parte demandada.

**4.** De la Exposición Narrativa de la Prueba (EPN) surge que:

*"Como parte del litigio de instancia, Lizzette verificó la descripción de los deberes de la Oficial de Salud y Seguridad Ocupacional de TLD. Ella también buscó en el expediente médico de Margarita y en documentos dejados por Raquel Ramos para ver si aparecía alguna situación particular que Margarita le hubiera presentado a Raquel Ramos. Lizzette preparó una certificación haciendo constar que ella no había encontrado expediente alguno donde Raquel Ramos mantuviera anotaciones sobre asuntos que le hubiera traído Margarita."* (ENP, pág. 27).

Durante el contrainterrogatorio se estableció que:

*"Lizzette preparó el Exhibit #12 de TLD -Certificación de 10 de mayo de 2005 por Lizzette Vélez-, sobre funciones de Raquel Ramos y la búsqueda en sus expedientes, a petición de la abogada de TLD. Lizzette admitió que a ella no le constaba que lo que ella certificó en el Exhibit #12 de TLD fuera así en el año 2001. Lizzette admitió que cuando en dicha Certificación se mencionan las funciones de Raquel Ramos, esta información ella la obtuvo del "job descripción" de la plaza que ocupaba Raquel, cuyo documento no incluye como parte de las funciones de dicha plaza el recibir querellas de discrimen. (EPN, pág. 32).*

*Surge de dicha hoja de deberes que la persona que ocupaba esa plaza sí tomaba notas de los accidentes ocupacionales y condiciones de salud en la empresa. Al preguntársele porque Lizzette certificó que a Raquel Ramos no le correspondía tomar notas o realizar apuntes en los expedientes, Lizzette explicó que ella se refería al expediente de salud del empleado; tomar notas de querellas, quejas del empleado no sería parte de las funciones de Raquel Ramos. Los reportes e informes que dice la hoja de deberes que Raquel Ramos debía mantener era de las inspecciones que ella hacia, de los accidentes ocupacionales, llevar los "logs" de OSHA. "Salud ocupacional" es un término técnico. Raquel Ramos no hacía apuntes de discrimen, ya que no era esa su área, aunque la hoja de deberes de su puesto si incluía hacer apuntes. Lizzette explicó que ella revisó los expedientes médicos de las personas envueltas en el litigio de instancia y no vio ninguna anotación de Raquel Ramos."* (EPN, pág. 32).

Más importante aún resulta que:

*"Ella buscó en el expediente médico de Margarita Ortiz, y en los documentos disponibles de Raquel Ramos, incluyendo hasta los documentos sueltos en una caja."* (Exposición narrativa, pág. 33).

**5.** Véase págs. 94-104 del Apéndice de la Apelante.

**6.** En diciembre de 1995, TLD le había aprobado a la apelante unas vacaciones a partir del 26 de diciembre de 1995 hasta, e incluyendo, el 29 de diciembre de 1995. La apelante debía reintegrarse a su trabajo el 2 de enero de 1996. Sin embargo, ésta no se reportó a trabajar el 2 de enero de 1996 ni se comunicó con su supervisor directo para notificar su ausencia.

En dicha ocasión, TLD no le impuso a la apelante sanción disciplinaria alguna y se le dio la oportunidad de enmendar la información en su tarjeta de asistencia para cargar las ocho horas del referido 2 de enero de 1996 a vacaciones.