Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| RUBÉN DÍAZ RODRÍGUEZ<br><br>Apelante<br><br><br>v.<br><br><br>SERVIMETAL, LLC Y OTROS<br><br>Apelados | TA2025AP00316 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso número: CG2018CV02952<br><br>Sobre: Discrimen, Daños y Perjuicios Contractuales y otros |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 31 de octubre de 2025.

Comparece la parte apelante, Rubén Díaz Rodríguez, y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, el 6 de agosto de 2025, notificada el día 9 del mismo mes y año. Mediante dicho dictamen, el foro primario declaró Ha Lugar la moción de sentencia sumaria promovida por la parte apelada, Servimetal, LLC. En su consecuencia, desestimó con perjuicio la acción presentada por el apelante.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado. Veamos.

### I

El 20 de noviembre de 2018, Rubén Díaz Rodríguez (Díaz Rodríguez o apelante) radicó una *Querella*, posteriormente enmendada,[1] sobre despido injustificado y discrimen por edad en

---

[1] Entrada Núm. 15 del Caso Núm. CG2018CV02952 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Cabe destacar que la acción de epígrafe fue enmendada a los únicos efectos de añadir a Chubb Insurance Company of P.R. como parte coquerellada.

contra de Servimetal, LLC. (Servimetal) y Chubb Insurance Company of P.R. (Chubb) (apelados).[2] La referida causa de acción fue instada al amparo del procedimiento sumario de la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 *et seq.* (Ley Núm. 2-1961).[3] Díaz Rodríguez alegó que, en julio de 2005, luego de que Servimetal adquiriera a Perry Products, Inc., lo cambiaron de puesto, de empleado de mostrador a representante de ventas (*outside salesman*). Sostuvo que este último se realizaba fuera de los predios de la compañía y requería bachillerato, hablar de forma fluida el inglés y tener adiestramiento en programas de computadoras. Arguyó que había cuestionado las razones del cambio porque Servimetal contaba con personal mejor cualificado para la mencionada posición. Alegó que la respuesta del jefe de operaciones de Servimetal fue advertirle que si no aceptaba el traslado sería despedido. Según adujo, debido a tal advertencia, no tuvo otra alternativa que aceptar el cambio de puesto.

Díaz Rodríguez argumentó en la acción de epígrafe que, al momento del cambio de puesto, tenía cincuenta y un (51) años y que la persona que le sustituyó en el mostrador, Alfred López (López), era un empleado de aproximadamente treinta seis (36) años y tenía menos antigüedad que él en la compañía. Alegó, además, que dicho empleado estaba mejor cualificado para el puesto de representante de ventas y tenía experiencia previa como tal.

Por otro lado, Díaz Rodríguez alegó en la *Querella* que era el único representante de ventas al que se le pagaba una asignación de trescientos dólares ($300.00) mensuales por el uso de su vehículo personal, mientras que a los demás representantes se le pagaba

---

[2] Entrada Núm. 1 del Caso Núm. CG2018CV02952 en el SUMAC.
[3] El 7 de junio de 2019, notificada el 10 del mismo mes y año, el foro de origen emitió una *Orden* mediante la cual convirtió *motu proprio* el procedimiento a uno ordinario. Véase, Entradas Núm. 28 y 29 del Caso Núm. CG2018CV02952 en el SUMAC.

seiscientos dólares ($600.00) mensuales. Igualmente, alegó que Servimetal le impuso una meta de $960,000.00 en ventas para el año 2016, que le resultó imposible de cumplir. Además, sostuvo que Servimetal no honró todas las ventas que realizó en su ruta y que esta les pagaba a sus vendedores comisiones equivalentes al diez por ciento (10%), independientemente de si la orden de compra fue hecha por los vendedores o si el cliente realizó su compra directamente a la compañía, mientras que a él no se le pagaron dichas comisiones. Por esto, estimó que Servimetal le adeudaba no menos de $100,000.00 por concepto de comisiones no pagadas.

En virtud de lo anterior, Díaz Rodríguez alegó que Servimetal lo reclasificó a una posición para la cual no estaba cualificado con la intención de forzarlo a renunciar. Arguyó que fue sometido a condiciones onerosas de trabajo y humillaciones desde su cambio a representante de ventas y que esto lo obligó a renunciar a su empleo, luego de veinticuatro (24) años de trabajar para Servimetal. Sostuvo que, como consecuencia, sufrió daños emocionales y angustias mentales, como ansiedad, incertidumbre, desasosiego, temor por su futuro laboral y estabilidad económica, trastorno de sueño y percepción de menosprecio. Además, alegó que también sufrió la pérdida de su ingreso y los beneficios que disfrutaba en su empleo. Según adujo, como consecuencia de lo anterior, en febrero de 2017, presentó una querella ante la Unidad Anti-Discrimen del Departamento del Trabajo y Recursos Humanos (Unidad Anti-Discrimen). Sin embargo, indicó que, en octubre de 2018, sometió una solicitud para litigar el caso frente al foro judicial porque los esfuerzos de mediación realizados por la Unidad Anti-Discrimen resultaron infructuosos.

Por su parte, el 10 de diciembre de 2018, Servimetal presentó su *Contestación a Querella*,[4] posteriormente enmendada,[5] mediante la cual negó las alegaciones esbozadas en su contra y planteó varias defensas afirmativas.[6] Entre otras cosas, alegó que Díaz Rodríguez fue su empleado desde el 1 de octubre de 2005 hasta el 15 de abril de 2016, fecha en que renunció. Sostuvo que dicha renuncia fue libre y voluntaria y objetó que se tratara de un despido constructivo. Arguyó que ninguno de sus administradores, supervisores, gerentes ni otro empleado suyo creó un ambiente hostil, ni condiciones de trabajo intolerables.

Luego de varios trámites procesales, el 23 de junio de 2020, Servimetal instó una *Solicitud de Sentencia Sumaria*.[7] En síntesis, expuso que, conforme al Manual de Empleados, Díaz Rodríguez incumplió con el procedimiento interno de solución de disputas de la compañía y que, al no agotar dicho mecanismo, estaba impedido de incoar la presente reclamación. Sostuvo, además, que Díaz Rodríguez no contaba con prueba que estableciera discriminación

---

[4] Es preciso señalar que Chubb presentó su alegación responsiva el 30 de abril de 2019. Véase, Entrada Núm. 25 del Caso Núm. CG2018CV02952 en el SUMAC.

[5] Entrada Núm. 19 del Caso Núm. CG2018CV02952 en el SUMAC.

[6] Entradas Núm. 8 y 9 del Caso Núm. CG2018CV02952 en el SUMAC.

[7] Entrada Núm. 49 del Caso Núm. CG2018CV02952 en el SUMAC. Junto a su petitorio, Servimetal presentó los siguientes documentos: (1) *Paquete de Ingresos* de Servimetal para Díaz Rodríguez del 1 de octubre de 2005; (2) *Declaración Jurada* suscrita por Emilio M. Ortiz el 22 de junio de 2020; (3) *Solicitud de Cambio* de puesto del 1 de enero de 2006; (4) *Solicitud de Cambio para Ventas Externas* del 11 de junio de 2008; (5) *Aprobación de Cambio y Aumento de Salario y Beneficios* del 11 de junio de 2008; (6) *Compensación Vendedor de Counter* de Díaz Rodríguez del 12 de julio de 2010, 1 de septiembre de 2010 y 8 de noviembre de 2010; (7) *Asignación de Posición de Vendedor Externo* del 13 de julio de 2015; (8) *Aumento de Salario y Beneficios Adicionales* del 13 de julio de 2015; (9) *Contratación de Alfred López* del 17 de octubre de 2014; (10) *Nueva Plaza en Ventas Internas a Alfred López* del 10 de julio de 2015; (11) *Declaración Jurada* suscrita por Alexandra Tirado del 22 de junio de 2020; (12) *Carta de Renuncia de Díaz Rodríguez* del 15 de abril de 2016; (13) *Recibo de Manual de Empleado* del 26 de septiembre de 2005; (14) *Política de Puertas Abiertas*; (15) *Carta de Díaz Rodríguez a Emilio Pérez* del 1 de agosto de 2011; (16) *Carta de Emilio Pérez a Díaz Rodríguez* del 2 de agosto de 2011; (17) *Negociación con Century Metals* del 28 de marzo de 2016; (18) *Contratación con Century Metals* del 16 de mayo de 2016, 6 de junio de 2016 y 16 de junio de 2016; (19) *Contestación a Requerimiento de Producción de Documentos* del 20 de mayo de 2020. Por otro lado, es importante resaltar que, el 24 de julio de 2020, Chubb presentó una *Moción Uni[é]ndonos a Petición de Sentencia Sumaria* para unirse al petitorio sumario instado por Servimetal y, por consiguiente, solicitó la desestimación del caso.

por edad, ni cumplía con los requisitos necesarios para que su renuncia se pudiera considerar una involuntaria.

En específico, Servimetal argumentó que el cambio de posición de vendedor de counter a vendedor externo no fue sin justa causa ni arbitrario ni caprichoso. Añadió que tampoco fue con la intención de hacer que Díaz Rodríguez renunciara. Por el contrario, sostuvo que: (a) surgió la necesidad de un vendedor externo; (b) no encontró a nadie externo; (c) asignó la ruta a otra vendedora externa, pero que ello no fue efectivo ya que fue añadida a la ruta que ya tenía; (d) identificó a Díaz Rodríguez como candidato para la posición; (e) el cambio se consultó con Díaz Rodríguez, quien estuvo de acuerdo y nunca presentó queja ni objeción a asumir dicha posición; (f) Díaz Rodríguez comenzó a ejercer la posición de vendedor externo, desde junio 2015 a abril 2016, y (g) en abril 2016, Díaz Rodríguez renunció a su empleo en la compañía.

En cuanto a la reclamación de discrimen, Servimetal argumentó que Díaz Rodríguez no fue despedido y que este no probó que haya sufrido un acto perjudicial, sino que se trató de un cambio de posición de vendedor interno a externo. Además, adujo que dicho cambio conllevó un aumento de sueldo y cobro de comisiones para Díaz Rodríguez. Asimismo, arguyó que Díaz Rodríguez nunca notificó a la compañía sobre los hechos alegados, de cómo se sentía, ni tampoco presentó una queja formal escrita.

En respuesta, el 28 de junio de 2022, Díaz Rodríguez se opuso.[8] En esencia, argumentó que existen suficientes controversias

---

[8] Entrada Núm. 82 del Caso Núm. CG2018CV02952 en el SUMAC. Es importante resaltar que Díaz Rodríguez se opuso originalmente el 14 de julio de 2020, por entender que la presentación del petitorio sumario era prematura porque el descubrimiento de prueba no había culminado. En desacuerdo, el 23 de julio de 2020, Servimetal replicó y arguyó que, si bien era cierto que el descubrimiento de prueba no había culminado, su moción de sentencia sumaria cumplía con lo dispuesto en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, por lo que procedía su reclamo sumario. Entendido el asunto, el 9 de marzo de 2021, el foro de instancia emitió una *Orden* en la cual indicó que el descubrimiento de prueba culminaría el 31 del mismo mes y año, por lo que le concedió un término posterior a Díaz Rodríguez para que se opusiera a los méritos de la solicitud de sentencia

sobre hechos esenciales y pertinentes planteados sobre el discrimen como para adjudicar el caso mediante sentencia sumaria. Particularmente, argumentó que fue removido de su posición como vendedor de counter para pasar a desempeñarse como vendedor externo, a pesar de que no hablaba el idioma inglés, lo cual era necesario para comunicarse con suplidores y clientes. Además, sostuvo que Servimetal ubicó a López en el puesto de vendedor de counter, quien estuvo por más de seis (6) meses recibiendo adiestramiento para desempeñarse como vendedor externo, dominaba el idioma inglés y era menor que él. Por tanto, planteó que existían hechos materiales en controversia que ameritaban la celebración de un juicio plenario.

Examinadas las posturas de las partes, el 6 de agosto de 2025, notificada el 9 del mismo mes y año, el Tribunal de Primera Instancia emitió la *Sentencia* que nos ocupa.[9] Mediante dicho dictamen, el foro primario declaró Ha Lugar la solicitud de sentencia sumaria promovida por Servimetal. En particular, el foro sentenciador formuló las siguientes determinaciones de hechos:

1. Díaz comenzó a trabajar para Perry Products, Inc. el 17 de marzo de 1992.
2. Díaz fungía como vendedor interno en el área de counter.
3. En mayo de 2005, Perry Products, Inc. fue adquirida por Servimetal, LLC, dedicándose esta última a la misma actividad económica, con la misma localidad y empleados.
4. Servimetal es una [c]orporación organizada conforme a las leyes del Estado Libre Asociado de Puerto Rico.
5. Díaz comenzó labores en Servimetal en el año 2005 cuando Servimetal adquirió la corporación de Perry Products, Inc.
6. Como parte de su empleo en Servimetal, el 26 de septiembre de 2005, Díaz recibió un Manual de Empleados.
7. Díaz continuó en la misma posición de vendedor interno en el área de counter cuando Servimetal adquirió la corporación de Perry Products, Inc.
8. En Servimetal, la posición de ventas de counter es lo que se conoce como vendedor interno, ya que las funciones las realiza en el counter de ventas.

sumaria pendiente. Entradas Núm. 52, 53 y 60 del Caso Núm. CG2018CV02952 en el SUMAC.
[9] Entrada Núm. 90 del Caso Núm. CG2018CV02952 en el SUMAC.

9. Díaz devengaba un salario anual de $24,000.00, más comisión al desempeñar la función de vendedor interno en el área de counter.

10. En junio de 2008[,] Díaz solicitó un cambio para la posición de ventas externas.

11. El 11 de junio de 2008, Servimetal aprobó el cambio solicitado por el querellante, así como el aumento de salario y los beneficios que iba a recibir como vendedor externo.

12. Durante el periodo de junio de 2008 hasta el año 2010, Díaz estuvo desempeñando la posición de vendedor externo.

13. En el año 2010, Díaz [se] volvió a desempeñar en la posición de vendedor interno en el área de counter.

14. El 29 de agosto de 2014, Servimetal se quedó sin un vendedor externo para el área [e]ste de Puerto Rico.

15. El 13 de julio de 2015, a *[sic]* Díaz comenzó a ejercer en la posición de vendedor externo.

16. Al cambiar de la posición de vendedor interno a vendedor externo, Díaz devengaba un salario anual de $24,000.00, más recibió un "[c]ar allowance" de $300.00 y una comisión de 8%.

17. Díaz ejerció como vendedor externo desde el 13 de julio de 2015 hasta el 15 de abril de 2016.

18. Durante este periodo, Díaz no recibió amonestación alguna por productividad.

19. Durante este periodo, Díaz no recibió amonestación alguna por incumplimiento con las metas de ventas.

20. Durante este periodo, Díaz no fue suspendido.

21. Durante este periodo, Díaz no presentó queja escrita alguna sobre cualquier trato o ambiente que provocara o pudiera provocar su renuncia.

22. Durante este periodo, Díaz no presentó queja escrita alguna con relación a que sintiera incomodidad en su puesto como vendedor externo.

23. Durante este periodo, en una ocasión, Díaz presentó una queja ante Servimetal con relación a que le estaban adjudicando ventas suyas a otros vendedores.

24. Al Díaz asumir la posición de vendedor externo, su plaza de vendedor interno quedó vacante.

25. Alfred López fue quien ocupó la posición de vendedor interno vacante.

26. Alfred López era empelado de Servimetal desde octubre de 2014.

27. Alfred López fue contratado por Servimetal inicialmente para el puesto de [a]sistente de [a]lmacén del área de Flow Control.

28. Alfred López devengaba un salario anual de $16,120.00.

29. El 10 de julio de 2015, Alfred López solicitó un cambio para vendedor interno en el área de counter.

30. Alfred López comenzó a ejercer en la posición de vendedor interno en el área del counter el 13 de julio de 2015.

31. Alfred López recibió un aumento de $7,880.00 para un nuevo salario anual de $24,000.00 al asumir la posición de vendedor interno en el área de counter.

32. El 15 de abril de 2016, Díaz entregó su carta de renuncia a Servimetal.

33. Previo a su renuncia en Servimetal, el 28 de marzo de 2016, Díaz recibió un correo electrónico de la empresa Century Metals and Supplies de Puerto Rico, Inc. (Century) del cual surgen las negociaciones de la oferta de empleo.

34. Century le ofrece mayor salario ($26,000.00 anual), mayor "car allowance" ($450.00) y mayor porciento de comisión (12%).

35. Century le ofrece una aportación de plan médico del 50%.

36. Díaz comenzó a trabajar como vendedor externo en Century el 16 de mayo de 2016.
37. En el mes de febrero de 2017, Díaz presentó una querella ante la Unidad Anti-Discrimen del Departamento del Trabajo y Recursos Humanos.
38. En octubre de 2018, Díaz presentó ante la Unidad Anti-Discrimen una solicitud para litigar el caso ante este foro judicial, fundamentado en que los esfuerzos de mediación realizados por dicha unidad resultaron infructuosos y en atención al tiempo transcurrido.
39. El 20 de noviembre de 2018[,] Díaz presentó [una] Querella ante este [t]ribunal en contra de Servimetal por alegado despido injustificado y discrimen por razón de edad.
40. El 21 de febrero de 2019, Díaz presentó [una] Querella Enmendada en la cual trajo como coquerellante a Chubb por ser la aseguradora que emitió póliza de seguro a Servimetal y la cual, *[sic]* estaba vigente a la fecha que ocurrieron los hechos.
41. Chubb es una asegurada organizada conforme a las leyes del Estado Libre Asociado de Puerto Rico.

El foro de origen concluyó que Díaz Rodríguez no fue despedido, sino que renunció a su empleo voluntariamente. Indicó que, durante el periodo en que Díaz Rodríguez ejerció el puesto de vendedor externo no presentó queja escrita alguna con relación a una incomodidad en su puesto, ni querellas relacionadas a las alegadas humillaciones a las que presuntamente estuvo expuesto. Señaló que no existía registro escrito que sustentara que, desde el 13 de julio de 2015 hasta el 15 de abril de 2016, Díaz Rodríguez estuvo expuesto a un ambiente laboral intolerable. Por otro lado, expresó que Díaz Rodríguez no logró establecer los elementos básicos necesarios para que progresara una acción de discrimen por razón de edad, por lo que entendió que no procedía la concesión de un remedio. En consecuencia, desestimó con perjuicio la acción presentada.

Inconforme, el 8 de septiembre de 2025, la parte apelante presentó el recurso de epígrafe y señaló el siguiente error:

El T[ribunal de] P[rimera] I[nstancia] erró al [d]eclarar [H]a [L]ugar la moción de sentencia sumaria presentada por la apelada y dictar sentencia sumariamente en la que desestimó las reclamaciones del apelante, a pesar de existir controversias de hechos esenciales respecto a los incidentes que la apelada alegó que demuestran que la renuncia del apelante no constituyó un despido constructivo.

En cumplimiento con nuestra *Resolución* del 11 de septiembre 2025, la parte apelada compareció ante nos mediante *Alegato de Apelación* el 7 de octubre del año corriente.

Con el beneficio de la comparecencia de las partes, así como la transcripción de la prueba oral, procedemos a resolver.

## II

## A

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y otros*, 2025 TSPR 78, resuelto el 5 de agosto de 2025; *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023); *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un

remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García,* supra; *Pérez Vargas v. Office Depot,* 203 DPR 687 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte

promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.* Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra,* la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Íd.,* pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales

materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros*, 213 DPR 80 (2024); *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, 2024 TSPR 62, resuelto el 17 de junio de 2024; *Oriental Bank v. Caballero García,* supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.* Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otro v. ELA y otros*, supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de

forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, 2025 TSPR 1, resuelto el 7 de enero de 2025; *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, supra; *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023); *Serrano Picón v. Multinational Life Ins.*, supra; *González Meléndez v. Mun. San Juan et al.*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, así como de su jurisprudencia interpretativa. *González Meléndez v. Mun. San Juan et al.*, supra. A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Econo y otro*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *González Meléndez v. Mun. San Juan et al.*, supra.

**B**

Por otro lado, la *Ley Sobre Despidos Injustificados*, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a *et seq.* (Ley Núm. 80-1976), tiene el propósito de proteger a la

persona empleada de actuaciones arbitrarias del patrono e imponer remedios económicos que desalienten la práctica de despedir a las personas empleadas injustificadamente. *Ruiz Mattei v. Commercial Equipment Finance, Inc.*, 2024 TSPR 68, resuelto el 21 de junio de 2024; *González Méndez v. Acción Social et al.*, 196 DPR 213, 229 (2016); *SLG Torres-Matundan v. Centro Patología,* 193 DPR 920, 929 (2015). Dicha política pública se sustenta en que el trabajo tiene una función social trascendental, tanto en el ámbito individual como en el colectivo. A esta realidad responde la afirmación de que el trabajo tiene un profundo significado ético, porque mediante este la persona aporta al bien común y se autorrealiza.

Las protecciones conferidas por la Ley Núm. 80-1976, *supra,* se extienden a toda persona empleada que: (1) trabaja para un patrono mediante remuneración; (2) haya sido contratada sin tiempo determinado, y (3) sea despedida sin que mediara una justa causa. 29 LPRA sec. 185a. Presentes estas circunstancias, la persona empleada, así despedida, tiene derecho a recibir de su patrono el pago de una indemnización, típicamente denominada como la *mesada,* cuya cuantía dependerá de la duración del empleo y del sueldo que devengaba. *Íd.*; *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 230 (2015); *Whittenburg v. Col. Ntra. Sra. Del Carmen*, 182 DPR 937, 950 (2011). Por tal razón, es importante destacar que "el estándar de justa causa es el requisito requerido en la mayoría de los países del mundo para convalidar las acciones de los empleadores. Si el patrono despide injustificadamente a un trabajador estaría entonces sujeto a la sanción económica que impone el estatuto protector". C. Zeno Santiago, *El Despido y la Política Social en Nuestro Estado de Derecho*, 34 Rev. Jur. UIPR 213, 217 (2000).

Ahora bien, nuestro ordenamiento jurídico no prohíbe absolutamente el despido de una persona empleada; más bien,

castiga el despido sin justa causa. *Segarra Rivera v. Int'l. Shipping et al.,* 208 DPR 964, 982 (2022); *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894, 904 (2011). En ese sentido, la Ley Núm. 80-1976, *supra,* considera injustificado el despido que se hace por mero capricho del patrono, y no guarda relación con la necesidad de asegurar el buen y normal funcionamiento de un establecimiento. 29 LPRA sec. 185b; *León Torres v. Rivera Lebrón,* 204 DPR 20, 38 (2020).

Cónsono con lo anterior, el Artículo 2 de la Ley Núm. 80-1976, 29 LPRA sec. 185b, instituye posibles situaciones en las cuales existe justa causa para el despido. En particular, desglosa las siguientes circunstancias:

(a) Que el obrero siga un patrón de conducta impropia o desordenada.

(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. [...]

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

[...]

Según lo precitado, la Ley Núm. 80-1976, *supra,* no establece específicamente qué constituye un despido injustificado, pero desglosa varios escenarios o circunstancias que liberan al patrono

de responsabilidad. *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 983; *Indulac v. Unión*, 207 DPR 279, 298 (2021). Algunas de estas circunstancias están basadas en conducta atribuible a la persona empleada, mientras que otras responden al curso decisorio de la gerencia empresarial. *Íd.* En ese sentido, las circunstancias constitutivas de justa causa, según previamente esbozados, constituyen meros ejemplos de situaciones asociadas a un despido. *Indulac v. Unión*, supra, pág. 299. Por lo tanto, el precitado estatuto no prevé el universo de incidencias que puedan surgir en un entorno laboral y que desemboquen en la cesantía de una persona empleada. *Íd.*

Es decir, el citado Artículo 2 de la Ley Núm. 80-1976, *supra*, no dispone una lista taxativa de las circunstancias que pueden dar lugar a un despido por justa causa. *Indulac v. Unión*, supra, pág. 299. Ello obedece a que el mencionado estatuto no favorece el despido como sanción a la primera falta cometida por una persona empleada. *Íd.*, págs. 299-300, citando a *Srio. del Trabajo v. I.T.T.*, 108 DPR 536, 542-543 (1979). Sin embargo, la referida norma no es una absoluta. *Íd.*, pág. 300. El Tribunal Supremo de Puerto Rico ha resuelto que existen circunstancias en las que una sola ofensa o primera falta pudieran justificar un despido. *Íd.* Así, pues, este curso de acción podría considerarse justificado si dicha acción u omisión, por su gravedad y potencial de agravio, pone en riesgo la seguridad, el orden y la eficiencia que constituye el funcionamiento de la empresa. *Indulac v. Unión*, supra, pág. 299.

Cónsono con lo anterior, al amparo de la Ley Núm. 80-1976, *supra*, se ha reconocido que una sola ofensa puede constituir justa causa para el despido. *Íd.* Ahora bien, dicha falta debe ser de tal seriedad o naturaleza que revele una actitud o un detalle del carácter de la persona empleada, tan lesivo a la paz y al buen orden de la empresa, que constituiría imprudencia esperar su reiteración

para separarla del establecimiento. *Íd.*; *Rivera v. Pan Pepín,* 161 DPR 681, 690 (2004); *Delgado Zayas v. Hosp. Int. Med. Avanzada,* 137 DPR 643 (1994); *Aut. Edif. Púb. v. Unión Indep. Emp. A.E.P.,* 130 DPR 983, 994 (1992). De modo que lo esencial es que, del agravio perpetrado por la persona empleada ponga de manifiesto una condición, que dentro del contexto del empleo sea inaceptable o intolerable, independientemente de que se trate de una primera falta. *Íd.,* págs. 300-301; *Torres Solano v. P.R.T.C.,* 127 DPR 499, 516 (1990).

Por otro lado, atinente a la controversia ante nos, el Artículo 5 del citado estatuto, 29 LPRA sec. 185e, define el *despido constructivo* de la siguiente manera:

> A los efectos de las secs. 185a a 185m de este título se entenderá por despido, además de la cesantía del empleado, su suspensión indefinida o por un término que exceda de tres (3) meses, excepto en el caso de empleados de industria y negocios estacionales o la renuncia del empleo motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar[,] tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra.

Al comentar sobre la definición contenida en el precitado artículo, el profesor Jorge Farinacci Fernós expone que:

> [N]o hay tal cosa como una causa de acción por despido constructivo en Puerto Rico. Lo que sí existe es una causa de acción por despido injustificado bajo la Ley 80, en la que se utiliza una definición particular de despido contenida en el artículo 5. Es decir, ya sea porque hubo una cesantía, una suspensión prolongada o una renuncia forzada, en todos estos casos estamos ante un despido, punto. Una vez se establece la existencia del despido, no hay diferencia en si fue producto de una cesantía o una renuncia forzada. Si bien el origen de esta figura es una causa de acción independiente proveniente del *common law*, la forma en que fue adoptada en Puerto Rico no fue como una causa de acción independiente sino como parte de la causa de acción estatutaria general de despido injustificado. J. Farinacci Fernós, *Interpretación liberal: presunciones probatorias en la legislación protectora del trabajo*, 83 Rev. Jur. UPR 16, 40-41 (2014).

De la definición estatutaria de *despido constructivo* podemos colegir tres (3) elementos importantes, a saber: (1) renuncia motivada; (2) por actuaciones del patrono, y (3) dirigidas a inducir o

forzar a la persona empleada a renunciar. Farinacci Fernós, *op. cit.*, págs. 41-42. Cabe resaltar que, el *despido constructivo* no se trata de cualquier tipo de renuncia, sino de una renuncia motivada por actuaciones del patrono. Para determinar si el efecto de las actuaciones del patrono está dirigido a inducir una renuncia, se ha determinado que se debe demostrar que una persona razonable se sentiría forzada a renunciar, es decir, utilizando un criterio objetivo y no a la visión subjetiva de la persona empleada individual. *Rivera Figueroa v. The Fuller Brush Co.*, supra, pág. 908; *S.L.G. Hernández-Beltrán v. TOLIC*, 151 DPR 754, 777 (2000); *Vélez de Reilova v. R. Palmer Bros., Inc.*, 94 DPR 175, 178 (1967).

Nuestro Tribunal Supremo advirtió que, "dado que el despido constructivo es un despido disfrazado que tiene la apariencia de una renuncia voluntaria, los tribunales de instancia deben ser sumamente cautelosos al momento de determinar si, en efecto, una renuncia fue forzada". *Rivera Figueroa v. The Fuller Brush Co.*, supra, pág. 918. De igual manera, no es relevante si la acción fue dirigida a varias personas empleadas, ya que la manera de probar la intención de forzar la renuncia es demostrando que una persona razonable en la posición de la empleada se sienta forzada a renunciar, lo cual puede ser el producto de condiciones onerosas dirigidas contra ella o contra varias empleadas. *Íd.*, págs. 918-919; Farinacci Fernós, *op. cit.*, pág. 44.

### C

La dignidad del ser humano, como principio rector en nuestro orden social, es inviolable. *Albino v. Ángel Martínez, Inc.*, 171 DPR 457, 470 (2007). La Sección 1 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico prohíbe el discrimen "por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas". Art. II, Sec. 1 Const. ELA, LPRA, Tomo I. En ese sentido, el Tribunal Supremo de Puerto Rico ha establecido

que estas categorías "responden a circunstancias fortuitas, naturales y espontáneas de la humanidad y son consustanciales al mero hecho de ser y existir". *Garib Bazaín v. Hosp. Aux. Mutuo et al.*, 204 DPR 601, 614 (2020). En base a esto, la Asamblea Legislativa adoptó varias leyes cuyo fin es salvaguardar la dignidad del ser humano en el contexto laboral.

La *Ley Antidiscrimen de Puerto Rico*, Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 LPRA sec. 146 *et seq.* (Ley Núm. 100-1959), prohíbe el discrimen en el empleo, de un patrono hacia una persona empleada, por razón de raza, edad, color sexo, entre otros. Esta pieza legislativa "establece responsabilidad civil y criminal para aquellos patronos privados que discriminen en el reclutamiento o en el empleo, al crear una causa de acción de daños y perjuicios para el empleado discriminado". *Garib Bazaín v. Hosp. Aux. Mutuo et al.*, supra, pág. 615. Aunque el estatuto no define el término discrimen, nuestro más Alto Foro ha expresado que existe discrimen "cuando ocurre un trato desigual injustificado; es decir, cuando alguna persona sufre una desigualdad por prejuicio o por arbitrariedad, sin que exista un fundamento razonable para la falta de trato igual". *Meléndez v. Asoc. Hosp. del Maestro*, 156 DPR 828, 845 (2002).

Al igual que la Ley Núm. 80-1976, *supra*, la *Ley de Transformación y Flexibilidad Laboral*, Ley Núm. 4-2017, según enmendada, 29 LPRA sec. 121 *et seq.* (Ley Núm. 4-2017), enmendó la Ley Núm. 100-1959, *supra*. Entre sus enmiendas, se encuentra la eliminación de la presunción controvertible a favor de la persona empleada contra su patrono contenida en el Artículo 3 de la Ley Núm. 100-1959, 29 LPRA sec. 148. Esta presunción suponía que el patrono cargara con el peso de la prueba. Específicamente, el Artículo 6.2 de la Ley Núm. 4-2017, 29 LPRA sec. 123a, dispone que:

Al aplicarse las disposiciones de cualquier ley de discrimen o represalia en el empleo, se reconocerá lo dispuesto en la legislación y reglamentación federal, al igual que las interpretaciones judiciales de las mismas de aquellos tribunales con jurisdicción en Puerto Rico, a los fines de asegurar interpretaciones consistentes en cuanto a términos o disposiciones similares, salvo que las disposiciones de la legislación local requieran una interpretación distinta.

Con esta enmienda, la Asamblea Legislativa adoptó el esquema probatorio utilizado por los foros federales, basado en ciertos turnos probatorios, según desarrollado por la Corte Suprema de los Estados Unidos en *McDonnell Douglas Corp. v. Green*, 411 US 792 (1973).

De modo que, es necesario que la persona empleada establezca su caso *prima facie* con prueba que demuestre que su despido fue sin justa causa y que existe la modalidad del discrimen alegado. Establecido el caso *prima facie*, le corresponde al patrono rebatir el mismo mediante una explicación razonable que demuestre la ausencia de ánimo discriminatorio. *Íd.* Si el patrono logra derrotar el caso *prima facie* presentado por la persona empleada, la inferencia de discrimen no procede. Es aquí donde la persona empleada debe demostrarle al juzgador que la razón ofrecida por el patrono no es más que un pretexto o subterfugio con el que busca justificar la acción adversa. Este esquema es uno probatorio que rige la etapa de sentencia sumaria o juicio plenario. Departamento del Trabajo y Recursos Humanos de Puerto Rico, *Guías para la Interpretación de la Legislación Laboral de Puerto Rico*, 1ra ed., 2019, pág. 159.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

La parte apelante plantea en su único señalamiento de error que el Tribunal de Primera Instancia incidió al emitir una sentencia sumaria y, en consecuencia, desestimar con perjuicio la acción de epígrafe. Plantea que existen controversias de hechos esenciales

sobre los incidentes que la parte apelada alega que demuestran que su renuncia no constituye un despido constructivo.

Hemos examinado cuidadosamente *de novo* el trámite procesal, el expediente ante nos, los escritos de las partes, así como la normativa aplicable y concluimos que el foro primario no erró en su determinación. Nos explicamos.

Luego de evaluar la totalidad del expediente ante nos, colegimos que no existen controversias sobre hechos medulares que impidan la solución de la presente causa por la vía sumaria. Contrario a lo propuesto por el apelante, la parte apelada respaldó con prueba documental lo planteado en su petitorio sumario. En particular, presentó documentos que sustentan el cambio de puesto del apelante de vendedor interno a vendedor externo. La apelada presentó, además, la aprobación de dicho cambio, incluyendo el aumento en beneficios para el apelante. Igualmente, dicha parte incluyó documentos de la contratación y cambio de puesto de López, empleado que sustituyó al apelante como vendedor interno. De dichos documentos se desprende que López, al momento en que surge la vacante de vendedor interno, ya era empleado de la compañía aquí apelada, y que solo fue un cambio de puesto, mas no una nueva contratación. Asimismo, la parte apelada anejó en su petitorio sumario la carta de renuncia presentada por el apelante y documentos que demuestran que este obtuvo una oferta de empleo de una compañía competidora, previo a la fecha de su renuncia.

Por otro lado, la parte apelante sostiene que su renuncia constituye un despido constructivo y que es necesaria la celebración de un juicio plenario para dirimir los hechos materiales que, según alega, están en controversia. Sin embargo, el apelante no controvirtió los hechos esbozados por la parte apelada en su moción de sentencia sumaria. El apelante no presentó prueba documental alguna que rebatiera la inexistencia de los tres (3) elementos

esenciales para demostrar un despido constructivo, a saber: (1) renuncia motivada, (2) por actuaciones del patrono, y (3) dirigidas a inducir o forzar a la persona empleada a renunciar. Es decir, el apelante no controvirtió la ausencia de actuaciones por la parte apelada dirigidas a inducir o forzar su renuncia, ni la ausencia en la prueba documental sobre las presuntas condiciones onerosas de trabajo y humillaciones que alegadamente sufrió como representante de ventas. Surge de la prueba documental que, no es hasta casi un (1) año después, en el momento en que la parte apelante presenta su carta de renuncia, que por primera vez expresa —por escrito— alegaciones de incomodidad con el puesto de vendedor externo. Sin embargo, la parte apelada presentó prueba documental que demuestra que cuenta con un procedimiento para buscar soluciones a situaciones preocupantes para los empleados en su ambiente de trabajo, pero no hay documentación alguna que demuestre que el apelante utilizó este mecanismo para informar su situación. En conclusión, la parte apelante no presentó prueba documental que rebatiera la prueba presentada por la apelada.

En cuanto a las alegaciones sobre discrimen en el empleo, conforme a lo resuelto por el foro *a quo*, y según se desprende de la documentación ante nos, hubo un cambio de puesto del apelante a vendedor externo, el cual conllevó un aumento en beneficios. Al quedar el antiguo puesto vacante, la apelada suplió dicha vacante con un empleado de la misma empresa. El hecho de que el empleado que ocupó la vacante sea menor en edad y antigüedad que el apelante, no es prueba, por sí misma, de que la parte apelada haya discriminado al apelante por razón de edad.

Luego de un estudio minucioso del expediente, no hay controversia de hechos materiales y, al aplicar el derecho vigente a los hechos, concluimos que no se cumplen con los elementos necesarios para probar un despido constructivo ni discrimen por

edad. Por el contrario, la prueba documental presentada demuestra que la renuncia del apelante fue una libre y voluntaria. En ese sentido, no se cometió el error señalado.

En virtud de los anterior, colegimos que el Tribunal de Primera Instancia no erró al emitir la *Sentencia* declarando Ha Lugar la solicitud de sentencia sumaria promovida por la parte apelada. En fin, al evaluar concienzuda y ponderadamente *de novo* los eventos procesales al palio de la normativa jurídica antes esbozada, coincidimos con la determinación del foro apelado.

**IV**

Por los fundamentos que anteceden, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones